**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| JENNIFER PIGGOTT and<br>SLADE PIGGOTT,<br><br>      Plaintiffs,<br><br>and<br><br>HWASHIN AMERICA CORP.,<br><br>      Plaintiff in Intervention,<br><br>vs.<br><br>GRAY CONTRUCTION, INC.,<br><br>      Defendant/Third-Party Plaintiff,<br><br>vs.<br><br>COOPER STEEL<br>FABRICATORS, INC., et al.,<br><br>      Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.:  CV-06-1158<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>HWASHIN AMERICA CORPORATION'S</u>
<u>MOTION FOR LEAVE TO FILE ITS</u>
<u>AMENDED COMPLAINT IN INTERVENTION</u>

COMES NOW Plaintiff in Intervention Hwashin America Corporation ("Hwashin") and respectfully requests the Court grant it leave to file an Amended Complaint in Intervention asserting additional claims against James N. Gray Company a/k/a Gray Construction, Inc. ("Gray"), as well as integral claims against GNF Architects and Engineers ("GNF"), PSC, The Hardy Corporation ("Hardy"), Freeland-Harris Consulting Engineers of Georgia, Inc. (Freeland-Harris-Georgia"), Freeland-Harris Consulting Engineers of Kentucky, Inc. ("Freeland-Harris-Kentucky") (collectively, "Freeland-Harris"), All-South Subcontractors, Inc. ("All-South"), Mid-South

Subcontractors, Inc. d/b/a Mid-South Roof Systems ("Mid-South"), Cooper's Steel Fabricators, Inc. ("Cooper's Steel"), Latta Plumbing & Construction Co., Inc.("Latta"), and Firestone Building Products Company, LLC ("Firestone"). In support of this Motion, Hwashin states as follows:

1.      On or about November 17, 2006, Plaintiffs Jennifer and Slade Piggott ("Mr. and Mrs. Piggott") filed a Complaint in the Circuit Court of Butler County, Alabama.  Mr. and Mrs. Piggott's claims stem from the collapse of the roof at the Hwashin manufacturing facility in Greenville, Alabama ("Hwashin Facility").

2.      On December 29, 2006, Gray filed its Notice of Removal removing the case to the United States District Court for the Middle District of Alabama.

3.      On December 29, 2006, Hwashin filed its Motion to Intervene.

4.      On March 13, 2007, the Parties submitted their Report of Parties' Planning Meeting.  The Parties agreed to allow Mr. and Mrs. Piggott until July 13, 2007, to join additional parties and amend pleadings and to allow Defendants until August 10, 2007, to join additional parties and amend pleadings.

5.      On March 20 2007, the Court entered its Uniform Scheduling Order stating "Any motions to amend the pleadings and to add parties shall be filed on or before May 30, 2007."

6.      On May 16, 2007, the Court granted Hwashin's Motion to Intervene.

7.      On May 22, 2007, Hwashin filed its Complaint in Intervention.

8.      On May 25, 2007, Plaintiff in Intervention Hwashin filed a Motion to extend the deadline to file motions to amend the pleadings and add additional parties.

9.    On May 29, 2007, the Court granted Hwashin's Motion and extended the deadline to file motions, to amend the pleadings, and to add parties until June 29, 2007.

10.    On June 7, 2007 Gray filed its Motion for Leave to File a Third Party Complaint.

11.    On June 8, 2007, the Court granted Gray's Motion for Leave to File a Third Party Complaint.

12.    On June 8, 2007, Gray filed its Third Party Complaint.

13.    Through Gray's Third Party Complaint, Hwashin has learned the identities of the additional parties responsible for the design, construction and/or maintenance of the roof, structural system and drainage system of the Hwashin facility. These parties, in addition to others Hwashin had previously identified, are responsible for the catastrophic collapse of the roof at the Hwashin facility on October 17, 2006, which is the subject of this action.

14.    Hwashin sustained substantial damages as a result of the collapse.

15.    Gray contracted with Hwashin to design and build the Hwashin facility (the "Contract"). Among other obligations described in the Amended Complaint, Gray agreed to provide design services with the care and skill ordinarily used by members of the design profession practicing under similar conditions at the same time and locality of the Project and to be responsible for the quality of the design services and for the quality of the construction performed. Gray breached its contractual obligations to Hwashin resulting in the collapse of the Hwashin facility.

16.    Gray negligently, wantonly and/or recklessly failed to design and engineer the Hwashin Facility and negligently, wantonly and/or recklessly failed to use due care to

hire and retain qualified contractors and subconsultants, which factually and proximately resulted in the catastrophic collapse of the facility.

17.    GNF was contracted by Gray to provide architectural design services relating to the performance of the Contract, including, but not limited to, the roofs and drainage system for the roofs for the Hwashin Facility.  As "Architect of Record" for the Contract, GNF also had responsibility for coordinating the various design components of the facility. GNF negligently, wantonly and/or recklessly failed to use due care in its design the Hwashin Facility and negligently, wantonly and/or recklessly failed to use due care in the coordination of the various design components, which factually and proximately resulted in the catastrophic collapse of the facility.

18.    Gray contracted with Hardy to design and/or install certain mechanical systems for the Hwashin facility pursuant to the Contract, including the roof drainage system.  Hardy negligently, wantonly and/or recklessly failed to use due care in its design and/or installation of the roof drainage system, which factually and proximately resulted in the catastrophic collapse of the facility.

19.    GNF contracted with Freeland-Harris-Kentucky to provide structural engineering services for the construction of the Hwashin facility pursuant to the Contract, including the design of the structure supporting the roof.  Freeland-Harris-Kentucky then subcontracted with Freeland-Harris-Georgia to provide certain structural engineering services for the construction of the Hwashin facility, including the design of the structure supporting the roof.   Freeland-Harris negligently, wantonly and/or recklessly failed to use due care in its design and/or installation of the structure supporting the roof, which factually and proximately resulted in the catastrophic collapse of the facility.

20.     Gray contracted with All-South to provide certain engineering, materials, labor, equipment and services with respect to the installation of the roof and roof systems for the construction of the Hwashin facility pursuant to the Contract. All-South negligently, wantonly and/or recklessly failed to use due care in the design and installation of the roof and roof systems, which factually and proximately resulted in the catastrophic collapse of the facility.

21.     Gray contracted with Mid-South to install the gutters for the roof drainage system for the construction of the Hwashin facility pursuant to the Contract and to perform repairs to the roof drainage system after completion of the project. Mid-South negligently, wantonly and/or recklessly failed to use due care in the installation of and repairs to the roof drainage system, which factually and proximately resulted in the catastrophic collapse of the facility.

22.     Cooper's Steel was responsible for supplying and installing, including related design services, all structural steel, including girders, joists, bridging, roof decking, roof frames and other steel products designed and constructed for the Hwashin facility pursuant to the Contract. Cooper's Steel negligently, wantonly and/or recklessly failed to use due care in the design, supply and installation of the structural steel, which factually and proximately resulted in the catastrophic collapse of the facility.

23.     Hardy contracted with Latta to install all plumbing, including pipes incorporated into the roof drainage system at the Hwashin facility pursuant to the Contract. Latta negligently, wantonly and/or recklessly failed to use due care in the installation of the pipes incorporated into the roof drainage system, which factually and proximately resulted in the catastrophic collapse of the facility.

24.     Firestone manufactured the roof materials used on the roof over the office of the Hwashin facility pursuant to the Contract, and inspected and approved the roof after it was installed, and issued a warranty for the roof.  Firestone negligently, wantonly and/or recklessly failed to use due care in the manufacture, inspection, and warranting of the roof, which factually and proximately resulted in the catastrophic collapse of the facility.

25.     Hwashin timely moves this court for leave to file its Amended Complaint within the time set in the Court's Scheduling Order.  Thus, pursuant to Rule 15(a) applies and leave should be freely granted because justice so requires.

26.     By filing the Amended Complaint, Hwashin will name only two additional parties to this action, GNF and Mid-South.  All other parties against whom Hwashin asserts claims were either an original party or were added by Gray in its Third Party Complaint.

27.     Hwashin's rights and interests will be substantially affected by the issues raised in Gray's Third Party Complaint and Hwashin would likely be precluded from prosecuting its interests against the above parties in a subsequent action.

28.     Both the injuries to Mr. and Mrs. Piggott and the damages sustained and by Hwashin, and the respective claims arising therefrom, naturally and consequently resulted from a single occurrence—the collapse of the roof at the Hwashin facility— which occurred as a result of the negligence, design flaws or construction defects by which Gray, GNF, Hardy, Freeland-Harris, All-South Mid-South, Cooper's Steel, Latta and Firestone are responsible.

WHEREFORE, Hwashin respectfully requests this Court grant it leave to file the Amended Complaint in Intervention attached to this Motion as Exhibit "A".

Respectfully submitted this the 29th day of June, 2007.

/s/ William Christopher Waller, Jr.
**WILLIAM CHRISTOPHER WALLER, JR.**
Attorney for Plaintiff/Intervener

OF COUNSEL:
**BALL, BALL, MATTHEWS & NOVAK P.A.**
Post Office Box 2148
Montgomery, AL  36102-2148
(205) 982-4620
(205) 982-4630 (fax)

s/J. Lister Hubbard
**J. LISTER HUBBARD  (HUB007)**
**RICHARD H. ALLEN (ALL053)**
**ARDEN REED PATHAK (PAT072)**
Attorneys for Plaintiff/Intervener
Hwashin America Corp.

OF COUNSEL:
**CAPELL & HOWARD, P.C.**
Post Office Box 2069
150 South Perry Street
Montgomery, Alabama  36102-2069
(334) 241-8000
(334) 323-8888

## CERTIFICATE OF SERVICE

I hereby certify that on June 29th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

| | |
|---|---|
| Jere L. Beasley, Esquire<br>Julia Ann Beasley, Esquire<br>Beasley, Allen, Crow, Methvin,<br>　Portis & Miles, P.C.<br>Post Office Box 4160<br>Montgomery, AL  36103-4160 | Linda H. Ambrose, Esq.<br>Rogers & Associates<br>3000 Riverchase Galleria<br>Suite 650<br>Birmingham, Alabama 35244 |
| Thomas T. Gallion, III, Esquire<br>Constance C. Walker, Esquire<br>Felicia Abernathy Long, Esquire<br>Haskell, Slaughter,<br>　Young & Gallion, LLC<br>305 South Lawrence Street<br>Montgomery, AL   36104 | Albry Joe Peddy, Esquire<br>Robert B. Stewart, Esquire<br>Smith, Spires & Peddy, P.C.<br>2015 Second Avenue North<br>Suite 200<br>Birmingham, AL  35203-3711 |
| Brian Michael McClendon, Esquire<br>Elliot Britton Monroe, Esquire<br>Mickey B. Wright, Esquire<br>Lloyd, Gray & Whitehead, P.C.<br>2501 Twentieth Place South<br>Suite 300<br>Birmingham, AL  35223 | Charles Keith Hamilton, Esquire<br>Bainbridge, Mims, Rogers & Smith<br>Post Office Box 530886<br>Birmingham, AL  35253 |

/s/J. Lister Hubbard
**J. LISTER HUBBARD  (HUB007)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

JENNIFER PIGGOTT and &ast;
SLADE PIGGOTT, &ast;
                                    &ast;

     Plaintiffs,             &ast;     File Number CV-06-1158-F

v.                                &ast;

                                  &ast;
GRAY CONSTRUCTION, INC.,    &ast;

                                  &ast;
     Defendant.           &ast;

                                    &ast;
HWASHIN AMERICA CORP.,     &ast;

                                  &ast;
     Intervenor Plaintiff      &ast;

                                    &ast;
v.                                &ast;

                                    &ast;
JAMES N. GRAY COMPANY, a/k/a &ast;
GRAY CONSTRUCTION, INC.,    &ast;
GNF ARCHITECTS AND       &ast;
ENGINEERS, PSC, THE HARDY  &ast;
CORPORATION, FREELAND-   &ast;
HARRIS CONSULTING         &ast;
ENGINEERS OF GEORGIA, INC., &ast;
FREELAND-HARRIS CON-    &ast;
SULTING ENGINEERS OF     &ast;
KENTUCKY, INC.,  ALL-SOUTH  &ast;
SUBCONTRACTORS,  INC.,  MID- &ast;
SOUTH SUBCONTRACTORS, INC.,&ast;
d/b/a MID-SOUTH ROOF SYSTEMS,&ast;
COOPER'S STEEL FABRICATORS &ast;
INC.,  LATTA PLUMBING &amp;     &ast;
CONSTRUCTION CO., INC., and  &ast;
FIRESTONE BUILDING PRODUCTS&ast;
COMPANY, LLC            &ast;

                                    &ast;
     Defendants.          &ast;


EXHIBIT
A

GRAY CONSTRUCTION, INC.,

    Defendant and Third-Party
    Plaintiff

    v.

COOPER'S STEEL FABRICATORS,
INC., et. al.

    Third-Party Defendants.

## HWASHIN AMERICA CORPORATION'S
## AMENDED COMPLAINT IN INTERVENTION

COMES NOW, HWASHIN AMERICA CORPORATION ("Hwashin"), and, within the time limit provided in this Court's Scheduling Order, files its Amended Complaint in Intervention, and states as follows:

### THE PARTIES

1.

Hwashin restates Paragraphs 1 through 6 of its original Complaint in Intervention in Paragraphs 72 through 77 below.

2.

Defendant, James N. Gray Company, a/k/a Gray Construction, Inc., ("Gray") is a corporation incorporated in the State of Kentucky with its principal place of business located in the State of Kentucky and, at all times relevant hereto,

did business in the State of Alabama, (previously under the name of James N. Gray Company), and is subject to the jurisdiction of this Court (hereinafter referred to as "Gray").   It is believed that "James N. Gray Company, Inc." is presently a fictitious name for Gray.

3.

Gray may be served with process by serving its registered agent, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109.

4.

Defendant, GNF Architects and Engineers, PSC ("GNF") is a corporation incorporated under the laws of the State of Kentucky with its principal place of business located in the State of Kentucky and, at all times relevant hereto, did business in the State of Alabama, and is subject to the jurisdiction of this Court.

5.

GNF can be served by serving its registered agent, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109.

6.

Defendant, The Hardy Corporation, ("Hardy") is a corporation incorporated under the laws of the State of Alabama with its principal place of business located at Birmingham, Alabama, and is subject to the jurisdiction of this Court.

7.

Hardy may be served with process by serving its registered agent, Craig E. Westendorf, located at 430 12th Street, Birmingham, Alabama 35233.

8.

Defendant, Freeland Harris Consulting Engineers, of Georgia, Inc., ("Freeland-Harris-Georgia") is a corporation incorporated under the laws of the State of Georgia with its principal place of business located at Tucker, Georgia, and, at all times relevant hereto, did business in the State of Alabama, and is subject to the jurisdiction of this Court.

9.

Freeland Harris-Georgia may be served with process by serving its registered agent, The Corporation Company, located at 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109.

10.

Defendant, Freeland-Harris Consulting Engineers of Kentucky, Inc. ("Freeland-Harris-Kentucky") is a corporation incorporated under the laws of the State of Kentucky with its principal place of business in Lexington, Kentucky and, at all times relevant hereto, did business in the State of Alabama, and is subject to the jurisdiction of this Court.

11.

Freeland-Harris-Kentucky may be served with process by serving its registered agent, The Corporation Company, located at 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama.

12.

Defendant, All-South Subcontractors, Inc., ("All-South"), is a corporation incorporated under the laws of the State of Alabama with its principal place of business located in Birmingham, Alabama, and is subject to the jurisdiction of this Court.

13.

All-South may be served with process by serving its registered agent, CSC Lawyers, Incorporating SVC, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

14.

Defendant, Mid-South Subcontractors, Inc., d/b/a Mid-South Roof Systems, ("Mid-South") is a corporation incorporated under the laws of the State of Georgia with its principal place of business located in Georgia, and, at all times relevant hereto, did business in the State of Alabama and is subject to the jurisdiction of this Court.

15.

Mid-South may be served with process by serving its registered agent, National Registered Agents, Inc., located at 150 S. Perry Street, Montgomery, Alabama 36104.

16.

Defendant, Latta Plumbing & Construction Co., Inc. ("Latta"), is an Alabama corporation with its principal place of business located in Gardendale, Alabama, and is subject to the jurisdiction of this Court.

17.

Latta may be served with process by serving its registered agent, Rex Latta, located at 2605 Decatur Highway, Gardendale, Alabama 35071.

18.

Defendant, Cooper's Steel Fabricators, Inc. ("Cooper's Steel") is a Tennessee corporation with its principal place of business located in Shelbyville, Tennessee and, at all times relevant hereto, was authorized to do business and was doing business in the State of Alabama and is subject to the jurisdiction of this Court.

19.

Cooper's Steel may be served with process by serving its registered agent, CSC Lawyers, located at 150 S. Perry Street, Montgomery, Alabama 36104.

20.

Defendant, Firestone Building Products Company, LLC ("Firestone"), is an Indiana corporation with its principal place of business located in Indianapolis, Indiana and, at all times relevant hereto, was authorized to do business and was doing business in the State of Alabama, and is subject to the jurisdiction of this Court.

21.

Firestone may be served with process by serving its registered agent, National Registered Agents, located at 150 S. Perry Street, Montgomery, Alabama 36104.

22.

Hwashin is a corporation existing under the laws of the State of Delaware with its principal place of business located in the State of Alabama, and is subject to the jurisdiction of this Court.

## STATEMENT OF FACTS

23.

Hwashin restates Paragraphs 1 through 22 of this complaint as though set forth in full.

24.

On or about September 24, 2003, Hwashin entered into a contract with defendant Gray, wherein Gray agreed to design and build an approximately 273,000 square foot manufacturing facility, including an office building, in Greenville, Butler County, Alabama ("Contract"). Subsequently, but prior to the incident that is the subject of this lawsuit, Gray was involved in certain repair work to the roofs and/or related drainage systems for the manufacturing facility.

25.

Based on information and belief, at all times relevant hereto, Defendant GNF was contracted by Gray to provide, and did so provide, architectural services relating to the performance of the Contract, including, but not limited, to the roofs and drainage system for the roofs for the manufacturing facility ("Roofs"). As the "Architect of Record", GNF also had responsibility for coordinating the various design components for the facility.

26.

Based on information and belief, Defendant Hardy was retained by Gray to design and/or install certain mechanical systems for the Hwashin facility, including but not limited to the drainage system for the Roofs of the manufacturing facility referred to in the Contract.

27.

Based on information and belief, Defendant Freeland-Harris Kentucky contracted with Defendant GNF to provide structural engineering services for construction of the Hwashin facility pursuant to the Contract, including, but not limited to, design of the structure supporting the Roofs. Freeland-Harris Kentucky then subcontracted with Freeland-Harris Georgia to provide certain structural engineering services for the construction of the Hwashin facility, including but not limited to design of the structure supporting the Roofs. (These Freeland Harris defendants are referred to in this Complaint collectively as "Freeland-Harris").

28.

Based on information and belief, Defendant All-South was retained by Gray to perform certain engineering, materials, labor, equipment and services with respect to the installation of the Roofs for the manufacturing facility described in the Contract.

29.

Based on information and belief, Defendant Mid-South was retained by Gray to install the gutters for the drainage system for the Roofs of the manufacturing facility described in the Contract and to perform certain repairs to the roof drainage system prior to the loss which is the subject of this lawsuit.

30.

Based on information and belief, Defendant Cooper's Steel was responsible for supplying and installing, including related design services, the structural steel, girders, joists, bridging, roof decking, roof frames and other steel products for the buildings designed and constructed for Hwashin pursuant to the Contract.

31.

Based on information and belief, Defendant Latta was hired by defendant Hardy to install all plumbing at the Hwashin facility constructed pursuant to the Contract, including pipes incorporated into the roof drainage system.

32.

Firestone manufactured the Roofs over the office building owned by Hwashin that was constructed pursuant to the Contract, inspected and approved the Roofs after it was installed and issued a warranty regarding the Roofs.

33.

Based on information and belief, the office building described in the Contract was substantially completed on or about June 30, 2004.

34.

Based on information and belief, after the Roofs, structural system and drainage system for the Roofs were installed, they were, or should have been, inspected by employees, representatives and/or agents of the Defendants.

35.

Based on information and belief, employees, agents and/or representatives of defendants approved the installation of the Roofs, the structural system for the Roofs and/or the drainage system for the Roofs.

36.

On or about October 17, 2006, during a rainstorm, the roof over the office building of the manufacturing facility described above suddenly collapsed.

37.

Based on information and belief, the roof over the office building of the manufacturing facility collapsed due to inadequate drainage for the Roofs for the manufacturing facility and/or inadequate structural support for the Roofs.

38.

Based on information and belief, the roof over the office building collapsed because the design and/or installation of the drainage system, the roofing system and/or the structural system for the Roofs were inadequate and/or were otherwise insufficient to handle the rainwater accumulating on the Roofs, causing rain water to pool on top of that roof until the building could no longer hold the weight of the water, resulting in the collapse of the roof and walls of the office building.

39.

As a result of the incident described above, Hwashin suffered damages to its manufacturing facility, business property and other contents, an interruption of its business and other related damages.

## COUNT ONE
## (NEGLIGENCE – ALL DEFENDANTS)

40.

Hwashin incorporates paragraphs 1 through 39 of this Complaint as though set forth in full.

41.

Defendants had a duty to use reasonable care in their design, inspection, coordination, installation, repairs and/or construction of Hwashin's manufacturing facility, including its office building.

42.

Defendants breached their applicable standard of care and were negligent in their rendering of services for the Hwashin manufacturing facility.

43.

As a factual and proximate consequence of the Defendants' negligence, the office building collapsed and Hwashin suffered damages in excess of $100,000.00, for which it now seeks relief.

**WHEREFORE,** Hwashin requests that judgment be entered in its favor and against Defendants, in excess of $100,000.00, plus interest, costs, and such other relief as this Court deems appropriate.

<b><u>COUNT TWO</u></b><br><b><u>(BREACH OF CONTRACT – GRAY)</u></b>

44.

Hwashin incorporates Paragraphs 1 though 43 of this Amended Complaint at though set forth in full.

45.

On or about September 24, 2003, Hwashin entered into a contract with Gray whereby Gray contracted to design and build Hwashin's manufacturing facility in Greenville, Alabama, where the incident that is the subject of the lawsuit occurred ("Contract").

46.

Under the Contract, among other obligations, Gray agreed:

a. to provide design services with the care and skill ordinarily used by members of the design profession practicing under similar conditions at the same time and locality of the Project;

b. to be responsible to Hwashin for the quality of the design services and for the quality of the construction performed;

c. to provide design services, labor, materials, equipment, tools, construction equipment …and other facilities and services necessary for proper execution and completion of the work;

d. to be responsible for all construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the work;

e. to be responsible for the work complying with the requirements of the Contract Documents;

f. to be responsible for latent defects in the work;

g. to maintain its general liability and professional liability insurance for three (3) years after final payment to cover damages resulting from latent defects.

47.

Based on information and belief, Gray breached its contractual obligations to Hwashin, resulting in the collapse of the office building

48.

Gray's breach of its contractual obligations as described above proximately and factually caused the damages for which Hwashin seeks relief.

**WHEREFORE,** Hwashin requests that judgment be entered in its favor and against Gray, in excess of $100,000.00, plus interest, costs, and such other relief as this Court deems appropriate.

## COUNT THREE
## (NEGLIGENT HIRING, RETENTION AND TRAINING – GRAY)

### 49.

Hwashin re-allages paragraphs 1 through 48 of this Amended Complaint as though set forth in full.

### 50.

Gray had a duty to Hwashin to use due care to hire and retain qualified contractors and consultants to design and/or install the Roofs, and the structural and drainage systems therefore, for Hwashin's manufacturing facility.

### 51.

Gray had a duty to Hwashin to use due care to ensure that the companies or individuals it so hired were properly trained or otherwise qualified for the services rendered.

### 52.

Based on information and belief, Gray breached the standard of care when it failed to hire companies or individuals properly trained or otherwise qualified to perform their services for the design and/or construction of Hwashin's manufacturing facility.

### 53.

Based on information and belief, Gray's negligence as described above proximately and factually resulted in the damages for which Hwashin seeks relief.

**WHEREFORE,** Hwashin requests that judgment be entered in its favor and against Gray, in excess of $100,000.00, plus interest, costs, and such other relief as this Court deems appropriate.

### COUNT FOUR
### (BREACH OF THE IMPLIED WARRANTY
### OF SUITABILITY OF DESIGN)

54.

Hwashin re-alleges paragraphs 1 though 53 of this Complaint as though set forth in full.

55.

Under Alabama law, Defendants Gray, GNF, Hardy, All-South, Cooper's Steel and Freeland Harris impliedly warranted that their design would be suitable for the use intended.

56.

Based on information and belief, said defendants breached their implied warranty of suitability in that the Roofs, related drainage system and/or related structural system failed under intended rain conditions.

57.

Said Defendants breach of the implied warranty of suitability factually and proximately caused the damages for which Hwashin seeks relief.

**WHEREFORE,** Hwashin requests that judgment be entered in its favor and against said Defendants, in excess of $100,000.00, plus interest, costs, and such other relief as this Court deems appropriate.

## COUNT FIVE
## (BREACH OF THE IMPLIED WARRANTY OF WORKMANSHIP)

58.

Hwashin re-alleges paragraphs 1 through 57 of this complaint as though set forth in full.

59.

Defendants Gray, Hardy, Mid-South, Cooper's Steel, Latta and All-South impliedly warranted that the work that they performed with respect to the Roofs, structural system and/or drainage system for the Hwashin facility was done in a workmanlike manner.

60.

Based on information and belief, said Defendants breached their implied warranty of workmanship in that the Roofs and related structural and drainage systems were not constructed in a workmanlike manner and failed under foreseeable rain conditions.

61.

Said Defendants breach of the implied warranty of workmanship factually and proximately caused the damages for which Hwashin seeks relief.

**WHEREFORE,** Hwashin requests that judgment be entered in its favor and against said Defendants, in excess of $100,000.00, plus interest, costs, and such other relief as this Court deems appropriate.

## COUNT SEVEN
## (RECKLESS OR WANTON CONDUCT –
## ALL DEFENDANTS)

62.

Hwashin re-alleges paragraphs 1 though 61 of this complaint as though set forth in full.

63.

The Defendants actions described above were done either wantonly or recklessly, proximately resulting in the sudden and catastrophic collapse of Hwashin's administrative building.

64.

Hwashin contends that it is entitled to punitive damages based on the actions of said Defendants, which actions factually and proximately caused the damages for which Hwashin seeks relief.

**WHEREFORE,** Hwashin requests that judgment be entered in its favor and against said Defendants, in excess of $100,000.00, plus interest, costs, and such other relief as this Court deems appropriate.

## COUNT EIGHT
## (BREACH OF WARRANTY – FIRESTONE)

### 65.

Hwashin re-alleges paragraphs 1 through 64 of this complaint as though set forth in full.

### 66.

Hwashin purchased from Firestone the roof over the office building that collapsed.

### 67.

Firestone issued a warranty to Hwashin covering the roof over the office building.

### 68.

Firestone inspected the roof over Hwashin's office building after its completion, and warranted that it was properly manufactured and installed.

### 69.

In fact, the roof over Hwashin's office building was not properly completed or installed, contributing to the collapse of the office building.

### 70.

Firestone's breach of warranty proximately and factually caused the damages for which Hwashin seeks relief.

**WHEREFORE,** Hwashin requests that judgment be entered in its favor and against Defendant Firestone, in excess of $100,000.00, plus interest, costs, and such other relief as this Court deems appropriate.

## COUNT NINE

71.

Hwashin re-alleges paragraphs 1 through 70 of this complaint as though set forth in full.

72.

As set forth in Hwashin's Complaint in Intervention (Document 20), this is, in part, an action to protect the interest of Hwashin, by and through its worker's compensation carrier, the Alabama Self-Insured Worker's Compensation Fund, the real party in interest as to this Count Nine, for subrogation of worker's compensation benefits and medical benefits which have been paid and/or will be paid to or on behalf of Jennifer Piggott, a worker's compensation claimant. This Count Nine is made pursuant to §25-5-11(a), *Code of Alabama*, 1975, as amended.

73.

Plaintiff Jennifer Piggott was an employee of Hwashin on or about October 17, 2006, the date of her injury.

74.

The Alabama Self-Insured Worker's Compensation Fund is licensed to do business in the State of Alabama.

75.

Plaintiff Jennifer Piggott is over the age of nineteen years.

76.

The Alabama Self-Insured Worker's Compensation Fund has paid worker's compensation benefits and medical bills in excess of $46,625.00 at the present time to Jennifer Piggott and/or her medical care providers.

77.

Plaintiff Jennifer Piggott has filed this current action against alleged third-party tortfeasors.

WHEREFORE, the above premises considered, Hwashin, by and through its worker's compensation carrier, Alabama Self-Insured Worker's Compensation Fund, demands that it be reimbursed for worker's compensation benefits (including but not limited to indemnity and medical benefits currently paid or will pay in the future) paid to or on behalf of Plaintiff Jennifer Piggott, and those benefits payable in the future to or on behalf of Jennifer Piggott from the funds recoverable or to be recovered in the underlying tort action.

/s/W. Christopher Waller, Jr.
Christopher Waller, Esq. (WAL187)
James A. Rives (RIV005)
Attorneys for Intervener
Hwashin America Corp.


**OF COUNSEL:**
BALL, BALL, MATTHEWS & NOVAK
PO Box 2148
Montgomery, Alabama 36102-2148
(334) 387-7680
(334) 387-3222 (fax)


/s/J. Lister Hubbard
**J. LISTER HUBBARD  (HUB007)**
**RICHARD H. ALLEN (ALL053)**
**ARDEN R. PATHAK (PAT072)**
Attorneys for Intervener
Hwashin America Corp.


**OF COUNSEL:**
CAPELL & HOWARD, P.C.
Post Office Box 2069
150 South Perry Street
Montgomery, Alabama  36102-2069
334/241-8000

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

| | |
|---|---|
| Jere L. Beasley, Esquire<br>Julia Ann Beasley, Esquire<br>Beasley, Allen, Crow, Methvin,<br>  Portis & Miles, P.C.<br>Post Office Box 4160<br>Montgomery, AL 36103-4160 | James A. Rives, Esquire<br>William Christopher Waller, Jr.<br>Ball, Ball, Matthews & Novak P.A.<br>Post Office Box 2148<br>Montgomery, AL 36102-2148 |
| Linda C. Ambrose, Esquire<br>Rogers & Associates<br>3000 Riverchase Galleria<br>Suite 650<br>Birmingham, AL 35244 | Albry Joe Peddy, Esquire<br>Robert B. Stewart, Esquire<br>Smith, Spires & Peddy, P.C.<br>2015 Second Avenue North<br>Suite 200<br>Birmingham, AL 35203-3711 |
| Brian Michael McClendon, Esquire<br>Elliot Britton Monroe, Esquire<br>Mickey B. Wright, Esquire<br>Lloyd, Gray & Whitehead, P.C.<br>2501 Twentieth Place South<br>Suite 300<br>Birmingham, AL 35223 | Charles Keith Hamilton, Esquire<br>Bainbridge, Mims, Rogers & Smith<br>Post Office Box 530886<br>Birmingham, AL 35253 |
| Thomas T. Gallion, III, Esquire<br>Constance C. Walker, Esquire<br>Felicia Abernathy Long, Esquire<br>Haskell, Slaughter,<br>  Young & Gallion, LLC<br>305 South Lawrence Street<br>Montgomery, AL 36104 | |

/s/J. Lister Hubbard
**J. LISTER HUBBARD (HUB007)**