# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER PIGGOTT and | * | |
| SLADE PIGGOTT, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Case No. CV-06-1158-F |
| | * | |
| GRAY CONSTRUCTION, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| HWASHIN AMERICA CORP., | * | |
| | * | |
| Intervener Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| JAMES N. GRAY COMPANY, a/k/a | * | |
| GRAY CONSTRUCTION, INC., | * | |
| GNF ARCHITECTS AND | * | |
| ENGINEERS, PSC, HARDY | * | |
| MECHANICAL CO., INC., FREELAND | * | |
| HARRIS CONSULTING    ENGINEERS OF | * | |
| GEORGIA, INC., FREELAND HARRIS | * | |
| CONSULTING ENGINEERS OF | * | |
| KENTUCKY, INC.,  ALL-SOUTH | * | |
| SUBCONTRACTORS,  INC.,  MID | * | |
| SOUTH ROOF SYSTEMS, INC., | * | |
| COOPER'S  STEEL FABRICATORS, | * | |
| INC.,  LATTA PLUMBING & | * | |
| CONSTRUCTION    CO., INC., and | * | |
| FIRESTONE BUILDING    PRODUCTS | * | |
| COMPANY, LLC | * | |
| | * | |
| Defendants. | * | |

## HWASHIN AMERICA CORPORATION'S MOTION TO DISMISS
## ALL-SOUTH SUBCONTRACTORS, INC.'S CROSS CLAIMS

Comes Now Plaintiff in Intervention and Third Party Defendant, Hwashin America Corporation ("Hwashin") and moves to dismiss All-South Subcontractors, Inc.'s ("All-South") cross claims against it.

*STANDARD OF REVIEW*
*FOR MOTION TO DISMISS*

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is proper where it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hummings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). However, when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## I.   ALL-SOUTH'S CROSS CLAIMS AGAINST HWASHIN FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In its Answer to Third Party Complaint, All-South alleges contractual and common law indemnity cross claims against Hwashin. (Doc. 62, p.2-6). For the

2

reasons set forth below, both claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.    All-South has not sufficiently pled a third-party beneficiary claim.

All-South attempts to state a claim for contractual indemnity against Hwashin, despite the fact that it has no contract with Hwashin, and has not even alleged a contract with Hwashin.   Rather, All-South bases this claim upon a provision contained in the contract between Gray and Hwashin.[1]   All-South has not, and cannot, plead sufficient facts to establish that it was a third-party beneficiary of the Hwashin/Gray contract, and therefore, cannot rely upon that contractual provision. Under Alabama law, a third person has no rights under a contract between others unless the contracting parties *intend* that the third person receive a direct benefit enforceable in court (as opposed to an "incidental" benefit).   *Federal Mogul Corp. v. Universal Constr. Co.*, 376 So. 2d 716, 723-24 (Ala. Civ. App. 1979).   The *Federal Mogul* court also held that the courts must respect a contract provision that provides that a third person shall have no rights under that contract.

In the present case, All-South has merely alleged that it was a "direct beneficiary of that provision of the contract because it was a direct subcontractor of Gray." (Doc. 62, ¶ 7)  All-South does not allege, and could not allege, that either

---

[1]    As set forth below, even if All-South could rely on this contract provision, this provision does not provide All-South (or Gray) with the indemnification rights it purports to have against Hwashin.

Hwashin or Gray, at the time the Hwashin/Gray contract was executed, *intended* that All-South should receive a direct benefit from this provision. Indeed, All-South does not even allege that it was a subcontractor of Gray at the time the Hwashin/Gray contract was executed. Lastly, All-South's claim is clearly barred by Section 1.2.3 of the Hwashin/Gray contract that states:

> **1.2.3** Nothing contained in this Part 2 Agreement shall create a contractual relationship between the Owner and any other person or entity other than the Design/Builder.

(Doc 77-1, Ex. A). As noted above, under Alabama law courts must respect a contract provision that provides that a third person shall have no rights under that contract. *Federal Mogul Corp. v. Universal Constr. Co.*, 376 So. 2d at 724.

Based upon the foregoing, All-South simply cannot, and has not, alleged sufficient facts to support a third-party beneficiary claim against Hwashin.

**B.     The Contract Clause Under Which All-South Claims Contractual Indemnity is Wholly Irrelevant to the Subject Matter of This Action.**

Following the lead of Defendant Gray Construction, Inc. ("Gray"), All-South makes the same spurious contractual indemnity claim against Hwashin as Gray alleges in its Third Party Complaint. (Doc. 26, ¶¶ 16, 32-36). All-South quotes subsection 11.10.4.3, a portion of Section 11.10, of the design/build

4

contract between Hwashin and Gray (the "Contract") (Doc. 77-1, Ex. A) as the basis for its contractual indemnity claim against Hwashin. (Doc. 62, ¶ 6). **This provision is quoted completely out of context**. Upon even a cursory review of the entirety of Section 11.10, and specifically 11.10.4, it is easy to recognize that this section applies only to the indemnity obligations of the owner which arise out of environmental conditions.

Section 11.10 is entitled "**Site Conditions/Environmental Matters**." Subsection 11.10.1 provides protection from liability to Gray for site conditions existing at the time of contract.[2] Subsection 11.10.2 provides similar protection from liability to Gray, but applies specifically to hazardous materials. It also requires Hwashin to perform or provide all environmental, subsurface and geotechnical testing, prepare the site to be suitable for construction, and it shields Gray from liability arising out of unexpected or differing site conditions that existed at the time of contracting or were encountered during construction. Subsection 11.10.3 requires Hwashin to perform or furnish an environmental audit and, if Hwashin fails to carry out this requirement, absolves Gray of any liability arising out of the conditions, substances or materials which would have been ascertained had the environment audit been done.

---

[2]     All-South makes no claim that a site condition that existed at the time of contracting or encountered during construction contributed to the roof collapse.

Subsection 11.10.4 (of which the indemnity provision relied upon by All-South is a part) applies only to potential pollutants from Hwashin's operations.

> 11.10.4 **Pollutants** from Owner's Operations. Owner's knowledge of its activities that will be conducted within the facility to be designed and constructed by Design/Builder, and the materials involved in those activities, is superior to Design/Builder's knowledge. Accordingly, and anything contained in this Agreement to the contrary notwithstanding, any duty or warranty by Design/Builder hereto shall not apply to the discharge, dispersal, escape, release or saturation of any **pollutant** into the atmosphere or any body of water or on, onto, upon, in or into the surface or subsurface of land resulting from Owner's operations. For purposes of this section the word **"pollutant"** shall mean any solid, liquid, gaseous, or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkaline, chemicals and wastes and shall include any **Hazardous Substance**. The capacity of the facility and the design of any of its parts, so as to prevent the escape, release, discharge, dispersal or saturation of **pollutants** shall be the sole responsibility of the Owner.
>
> 11.10.4.1 Encountering **Hazardous Substances**. In the event Design/Builder or its Subcontractors encounter on the Project site material reasonably believed to be **asbestos**, **polychlorinated biphenyl** ("PCB") or other **"Hazardous Substances"** as defined in paragraph 11.10.4.4 which has not been rendered harmless, Gray shall immediately stop Work in the area affected and report the condition to the Owner in writing. The Work in the affected area shall be resumed (1) in the absence of any **Hazardous Substances**, (2) when any **Hazardous Substances** have been rendered harmless, (3) by written agreement of the Owner and Gray, or (4) in accordance with the final determination under Article 10.
>
> 11.10.4.2 Working Conditions. Neither Design/Builder nor any Subcontractor shall be required without their consent to

6

perform any Work relating to **asbestos**, **PCB**, or other **Hazardous Substances**.

*11.10.4.3    Owner's Indemnification Responsibilities.  To the fullest extent permitted by law, the Owner shall defend, indemnify and hold harmless Design/Builder, its Subcontractors, Suppliers, consultants, agents and employees from any and all claims, liability, damages and expenses (including attorneys fees and expenses) arising out of or resulting from:*

*(a)   Any claim, suit, or legal proceeding to recover damages for wrongful death, bodily injury, illness or disease or injury to or destruction on tangible property alleged to be caused either directly or indirectly by any **substances, condition, element, or material** or any combination of the foregoing: (a) **produced** by Owner or **emitted or released** by Owner either intentionally or unintentionally, from the facilities designed and/or constructed by Design/Builder for the benefit of Owner, or (b) used by Design/Builder or incorporated by Design/Builder into the Work herein agreed to be performed by Design/Builder for the benefit of Owner if specifically required by Owner or if necessary for the planned use of the work and to the extent not caused by the **mishandling of such substances, condition, element, or material** by Design/Builder, it Subcontractors, suppliers, consultants, agents, and employees.*

(b)   Performance of the Work in the affected area if in fact the material is **asbestos**, **PCB**, or other **Hazardous Substances**, and has not been rendered harmless, provided that such claim, damages, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and to the extent not caused by the negligent act or omission of Design/Builder, its Subcontractors, suppliers, consultants, agents and employees.

11.10.4.4   Definition of **Hazardous Substances**.   For purposes of this Agreement, the term **"Hazardous Substances"** means any substance, including solid, liquid or

gaseous material which is **listed or defined as "Hazardous"** in the **Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"),** 42 U.S. Section 1251, et seq., **or regulation promulgated pursuant thereto**; and source, special, nuclear, or by product material as defined by the **Atomic Energy Act of 1954**, 42 U.S.C. Section 3011, et seq., **or any regulations promulgated pursuant thereto**; and includes any other substance defined by federal state or local statute, regulations, or ordinance as **hazardous, toxic, or dangerous waste or substance**.

(Contract, Doc. 77-1, Ex. A) (Emphasis added to denote placement within Subsection 11.10.4 of the indemnity provision relied upon by All-South and to showcase the subject matter).[3]

As the Court is most likely well aware, this case arises out of the bodily harm and property damages suffered as a result of the October 17, 2006 collapse of the roof over the administrative office at the Hwashin facility. (*See, e.g.*, Complaint ¶ 14, Doc. 2, Att. #1). Obviously, the issues in this case in no way implicate paragraph 11.10.4.3's indemnity obligations which clearly and unambiguously apply to the encounter of Hazardous Substances or other pollutants. More specifically for purposes of the present motion, ***All-South has failed to allege any***

---

[3]    Additionally, it is telling to note that Section 11.5 of the Contract addresses general contractual indemnification. However, language creating the right to indemnification of the Design/Builder or any of its subcontractors, outside of the limited context to which paragraph 11.10.4.3 applies, is not included in this Section of the Contract, nor is it found anywhere else in the contract.

*fact which could conceivably implicate Hwashin's duty to indemnify upon an encounter of a Hazardous Substance or other pollutant.*

Under Alabama law, the determination of whether a written contract is ambiguous is a question of law for the court, which is subject to *de novo* review. *Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 796 (11th Cir. 1996) (citing *Vulcan Painters, Inc. v. MCI Constructors, Inc.*, 41 F.3d 1457, 1460 (11th Cir. 1995); *Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co.*, 662 So. 2d 314, 316 (Ala. 1993)). Furthermore, "in the absence of ambiguity, the court cannot interpret the contract but must take it as it is written." *Id.* (quoting *Darling Shop of Birmingham v. Nelson Realty Co.*, 52 So. 2d 211 (Ala. 1951)). Likewise, the determination of whether the scope of a contract provision encompasses a party's claims is a matter of contract interpretation. That interpretation is guided by the intent of the parties, which, absent ambiguity, is evidenced by the plain meaning of the provision. *See Serra Chevrolet, Inc. v. Reylander*, --- So. 2d ----, 2007 WL 1723551, *5 (Ala. June 15, 2007) (citing *Ex parte Discount Foods*, Inc., 789 So. 2d 842, 844 (Ala. 2001).

All-South's claim for contractual indemnity is due to be dismissed pursuant to Rule 12(b)(6) because the contract language relied upon by All-South clearly and unambiguously applies only to the encounter of Hazardous Substances or other

pollutants, which has not been alleged by any stretch of the imagination. All-South has stated no basis for relief pursuant to the contract provision upon which it relies.

First, Section 11.10 is entitled "**Site Conditions/Environmental Matters**." No site conditions or environmental matters are in any way implicated in this entire lawsuit. Subsection 11.10.4 is entitled "**Pollutants from Owner's Operations**." The indemnity provision relied upon by All-South, paragraph 11.10.4.3, is a paragraph under Subsection 11.10.4. There has been no allegation of any encounter of a Hazardous Substance by All-South or any other party to this lawsuit. All-South does not allege, and cannot seriously contend, that the debris which it alleges Hwashin allowed to clog the roof drains by allegedly failing to maintain the roof drainage system is a Hazardous Substance. (Doc. 62, ¶ 9). Even if this case were about an environmental condition, to survive a motion to dismiss, All-South would have to allege that the Hazardous Substance which it encountered, and for which it is seeking indemnification under paragraph 11.10.4.3, was actually a Hazardous Substance as defined in paragraph 11.10.4.4.[4] The definition, quoted above, clearly does not encompass mere "debris."

Under no reading of All-South's cross claim for contractual indemnity could All-South recover pursuant to the unambiguous indemnity provision relied upon by

---

[4]    For obvious reasons, All-South does not go so far as to allege that the roof collapse was caused in any way by a Hazardous Substance. (Doc. 62, p.2-6).

All-South. Therefore, the claim is due to be dismissed under Rule 12(b)(6) for failure to state a claim.

**C.    All-South's Claim for Common Law Indemnity is Barred by ALA. CODE § 25-5-4 and the Rule of No Indemnity Between Joint Tortfeasors.**

All-South next attempts to seek indemnification from Hwashin based upon common law indemnity. (Doc. 62, ¶¶ 11-15). As aptly demonstrated by counsel for Firestone Building Products Company, LLC ("FBP") in its Motion to Dismiss Third Party Complaint (Doc. 57) and Reply to Gray's Response to Motion to Dismiss Third Party Complaint (Doc. 79), this claim is due to be demised pursuant to Rule 12(b)(6). Accordingly, Hwashin fully adopts herein by reference the law and facts discussed and the arguments made by FBP in support of the premise that in Alabama, there is no contribution between joint tortfeasors, thus the common law indemnity claim as alleged by All-South is due to be denied. (*See* Doc. 57 & 79).

All-South cannot assert a claim for common law indemnification against Hwashin for two reasons: (1) because the exclusivity of remedy provision of the Alabama Worker's Compensation Act, and (2) because there is no substantive right to contribution among joint tortfeasors.

**(i)    Absent an Applicable Contractual Indemnity Agreement, Hwashin is Immune From Liability Outside of the Payment of Worker's Compensation Benefits.**

Under Alabama law, subject to certain inapplicable exceptions, an employer cannot be held liable for the injury or death of an employee beyond its liability under the Alabama Worker's Compensation Act's exclusivity of remedies provision. ALA. CODE § 25-5-4 (1975). It follows that pursuant to Section 25-5-4, a third party charged with liability for the injury or death is barred from seeking common law indemnification from the employer. *See Paul Krebs & Assoc. v. Matthews & Fritts Const. Co., Inc.*, 356 So.2d 638 (Ala. 1978) ("To allow a third party tortfeasor to recover over against the employer for injury to an employee would be to allow indirectly what is prohibited directly."); *Gunter v. U. S. Fidelity & Guaranty Co.*, 340 So. 2d 749, 750 (Ala. 1976) (the general contractor, charged with active negligence in furnishing and maintaining a scaffold, could not implead the subcontractor, employer of decedent, in a wrongful death action).[5]

Thus, All-South's claim against Hwashin for common law indemnity is due to be dismissed.

---

[5] After the *Krebs* decision, the Alabama Supreme Court partially reversed itself by allowing third party tortfeasors to seek indemnification pursuant to an **express contractual indemnity obligation**. *The Goodyear Tire and Rubber Co. v. J.M. Tull Metals Co.*, 629 So. 2d 633, 638 (Ala. 1993) (stating "[w]e emphasize that our holding … is limited to the enforcement of *express* contracts of indemnification. The consideration of this rule in the context of *implied* contracts of indemnification is not raised in this appeal.") (emphasis in original). Thus, while the exclusivity provision of the workers' compensation act might not preclude an indemnification claim that is based upon an express contract provision, it does bar a common law indemnity claim against an employer.

12

### (ii)    Joint Tortfeasors Are Not Entitled to Contribution or Indemnity in Alabama.

The Alabama Supreme Court has consistently held that joint tortfeasors are not entitled to contribution or indemnity. *See Consolidated Pipe and Supply Co. v. Stockham Valves and Fitting, Inc.*, 365 So. 2d 968, 970 (Ala. 1978) ("No authority need be cited to support the proposition that there is no contribution among joint tortfeasors in Alabama."); *See also Humana Med. Corp. v. Bagby Elevator Co.*, 653 So. 2d 972 (Ala. 1995); *Apel Machine & Supply Co. v. J. E. O'Toole Engineering Co.*, 548 So.2d 445 (Ala. 1989); *Crigler v. Silac*, 438 So. 2d 1375 (Ala. 1983); *Parker v. Mauldin*, 353 So. 2d 1375 (Ala. 1977); *Gobble v. Bradford*, 147 So. 2d 619 (Ala. 1938); *Vandiver and Co. v. Pollack*, 19 So. 180 (Ala. 1894).

All-South only alleges that Hwashin allegedly failed to maintain the roof drainage system by allowing debris to clog the drains, which it alleges caused the collapse. All-South apparently attempts to clothe its right to claim common law indemnity in the distinction between active and passive negligence.[6] (Doc. 62, ¶ 15). However, the allegations against All-South made by the Piggotts and

---

[6]    When joint tortfeasors are in pari delicto, that is, when each is chargeable with active or affirmative negligence contributing to the injury for which recovery is sought, neither is entitled to indemnity from the other under common law indemnity principles. 41 AM. JUR. 2d Indemnity § 22. Thus, a party may not seek common-law indemnity **where the primary complaint alleges active, rather than passive, liability**. *See, e.g., Lakeside Oakland Development, L.C. v. H&J Beef Co.*, 644 N.W.2d 765 (Mich. 2002).

Hwashin in their Amended Complaints, and even by Gray in its Third Party Complaint, all state active negligence by All-South that resulted in the collapse.

Specifically, the Piggotts allege that All-South was hired by Gray to install the roof and that All-South negligently or wantonly failed to properly install the roof which proximately resulted in the collapse which caused the Piggotts' injuries. (Doc. 56-2, ¶¶ 16, 32, 52).  Hwashin alleges that All-South was hired by Gray to provide certain engineering, materials, labor, equipment and services with respect to the installation of the roof and that, among other theories for relief, All-South negligently or wantonly failed to use reasonable care in performing those services which resulted in the collapse which caused Hwashin's injuries. (Doc. 55-1, ¶¶ 28, 41-43, 62-64).  Gray alleges that it hired All-South to "provide all engineering, materials, labor, equipment, services, taxes, cartage and all other items necessary to complete the Roofing scope of work" at the Hwashin facility and that, among other allegations, "All-South negligently failed to install the office roof in accordance with the drawings and specifications, the roof manufacturer's specifications and/or national and local prevailing codes" and that "All-South's negligent acts specifically include … the improper installation of the roof membrane around the office drains, which restricted the drain openings and substantially diminished the drainage systems ability to drain water from the office roof and its failure to install a secondary drainage system in accordance with the

drawings and specifications." (Doc. 26, ¶¶ 23, 122-24). Thus, All-South has failed to state facts sufficient to plead an exception to the rule against contribution among joint tortfeasors.

All-South is in no position to, and indeed did not, plead the kind of freedom from active fault that would entitle it to assert a claim for common law indemnity under Alabama law. Furthermore, the Piggotts, Hwashin and Gray charge All-South with active negligence in their original and amended complaints. Finally, because All-South failed to plead an applicable contractual indemnity agreement, and indeed none exists, Hwashin cannot be held liable to All-South for Mrs. Piggott's injuries. Therefore, the claim is due to be dismissed under Rule 12(b)(6) for failure to state a claim.

WHEREFORE, above premises considered, Hwashin respectfully moves the Court to dismiss All-South's Cross Claims against it.

Respectfully submitted,

/s/ William Christopher Waller, Jr.
William Christopher Waller, Jr.
James A. Rives, Esquire
Attorneys for Intervener
Hwashin America Corp.

**OF COUNSEL:**
**Ball, Ball, Matthews & Novak P.A.**
Post Office Box 2148
Montgomery, AL  36102-2148

/s/J. Lister Hubbard
**J. LISTER HUBBARD (HUB007)**
**RICHARD H. ALLEN (ALL053)**
**ARDEN REED PATHAK (PAT072)**
Attorneys for Intervener
Hwashin America Corp.

OF COUNSEL:
**CAPELL & HOWARD, P.C.**
Post Office Box 2069
150 South Perry Street
Montgomery, Alabama  36102-2069
334/241-8000

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

| | |
|---|---|
| Jere L. Beasley, Esquire<br>Julia Ann Beasley, Esquire<br>Beasley, Allen, Crow, Methvin,<br> Portis & Miles, P.C.<br>Post Office Box 4160<br>Montgomery, AL 36103-4160 | James A. Rives, Esquire<br>William Christopher Waller, Jr.<br>Ball, Ball, Matthews & Novak P.A.<br>Post Office Box 2148<br>Montgomery, AL 36102-2148 |
| Thomas T. Gallion, III, Esquire<br>Constance C. Walker, Esquire<br>Felicia Abernathy Long, Esquire<br>Haskell, Slaughter,<br> Young & Gallion, LLC<br>305 South Lawrence Street<br>Montgomery, AL 36104 | Albry Joe Peddy, Esquire<br>Robert B. Stewart, Esquire<br>Smith, Spires & Peddy, P.C.<br>2015 Second Avenue North<br>Suite 200<br>Birmingham, AL 35203-3711 |
| Brian Michael McClendon, Esquire<br>Elliot Britton Monroe, Esquire<br>Mickey B. Wright, Esquire<br>Lloyd, Gray & Whitehead, P.C.<br>2501 Twentieth Place South<br>Suite 300<br>Birmingham, AL 35223 | Charles Keith Hamilton, Esquire<br>Bainbridge, Mims, Rogers & Smith<br>Post Office Box 530886<br>Birmingham, AL 35253 |
| Linda C. Ambrose, Esquire<br>Rogers & Associates<br>3000 Riverchase Galleria<br>Suite 650<br>Birmingham, AL 35244 | John S. Somerset, Esquire<br>Sudderth & Somerset<br>5385 First Avenue North<br>Birmingham, AL 35212 |

| | |
|---|---|
| John S. DeShazo, Esquire<br>John M. Laney, Jr., Esquire<br>Post Office Box 43798<br>Birmingham, AL 35243-0798 | Constance C. Walker, Esquire<br>Felicia Abernathy Long, Esquire<br>Thomas T. Gallion, III, Esquire<br>Haskell, Slaughter, Young & Gallion, LLC<br>305 South Lawrence Street<br>Montgomery, AL 36104 |
| Larry W. Harper, Esquire<br>Porterfield, Harper, Mills & Motlow<br>Post Office Box 530790<br>Birmingham, AL 35253-0790 | |

/s/J. Lister Hubbard
**J. LISTER HUBBARD  (HUB007)**