## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER PIGGOTT and<br>SLADE PIGGOTT, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Case No. CV-06-1158-F |
| | * | |
| GRAY CONSTRUCTION, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| HWASHIN AMERICA CORP., | * | |
| | * | |
| Intervener Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| JAMES N. GRAY COMPANY, a/k/a | * | |
| GRAY CONSTRUCTION, INC., | * | |
| GNF ARCHITECTS AND | * | |
| ENGINEERS, PSC, HARDY | * | |
| MECHANICAL CO., INC., FREELAND | * | |
| HARRIS CONSULTING    ENGINEERS OF | * | |
| GEORGIA, INC., FREELAND HARRIS | * | |
| CONSULTING ENGINEERS OF | * | |
| KENTUCKY, INC.,  ALL-SOUTH | * | |
| SUBCONTRACTORS,  INC.,  MID | * | |
| SOUTH ROOF SYSTEMS, INC., | * | |
| COOPER'S  STEEL FABRICATORS, | * | |
| INC.,  LATTA PLUMBING & | * | |
| CONSTRUCTION    CO., INC., and | * | |
| FIRESTONE BUILDING    PRODUCTS | * | |
| COMPANY, LLC | * | |
| | * | |
| Defendants. | * | |

## HWASHIN AMERICA CORPORATION'S MOTION TO DISMISS
## GRAY CONSTRUCTION, INC.'S THIRD PARTY COMPLAINT

Comes Now Plaintiff in Intervention and Third Party Defendant, Hwashin America Corporation ("Hwashin") and moves to dismiss Gray Construction, Inc.'s ("Gray's") third party claims against it.

*STANDARD OF REVIEW*
*FOR MOTION TO DISMISS*

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is proper where it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hummings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). However, when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## I.    GRAY'S THIRD PARTY CLAIMS AGAINST HWASHIN FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In its Third Party Complaint, Gray alleges contractual and common law indemnity claims against Hwashin. (Doc.26, ¶¶ 33-36, 58-61).    For

the reasons set forth below, both claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. The Contract Clause Under Which Gray Claims Contractual Indemnity is Wholly Irrelevant to the Subject Matter of This Action.

In its Third Party Complaint, Gray spuriously quotes subsection 11.10.4.3, a portion of Section 11.10, of the design/build contract between Hwashin and Gray (the "Contract") (Doc. 77-1, Ex. A) as the basis for its contractual indemnity claim against Hwashin. (Doc. 26, ¶¶ 16, 32-36). **This provision is quoted completely out of context**. Upon even a cursory review of the entirety of Section 11.10, and specifically 11.10.4, it is easy to recognize that this section applies only to the indemnity obligations of the owner which arise out of environmental conditions.

Section 11.10 is entitled **Site Conditions/Environmental Matters**. Subsection 11.10.1 provides protection from liability to Gray for site conditions existing at the time of contract.[1]  Subsection 11.10.2 provides similar protection from liability to Gray, but applies specifically to hazardous materials.  It also requires Hwashin to perform or provide all environmental, subsurface and geotechnical testing, prepare the site to be

---

[1]      Gray makes no claim that a site condition that existed at the time of contracting, or encountered during construction, contributed to the roof collapse.

suitable for construction, and it shields Gray from liability arising out of unexpected or differing site conditions that existed at the time of contracting or were encountered during construction. Subsection 11.10.3 requires Hwashin to perform or furnish an environmental audit and, if Hwashin fails to carry out this requirement, absolves Gray of any liability arising out of the conditions, substances or materials which would have been ascertained had the environment audit been done.

Subsection 11.10.4 (of which the indemnity provision relied upon by Gray is included) applies only to potential pollutants from Hwashin's operations.

> 11.10.4 **Pollutants** from Owner's Operations. Owner's knowledge of its activities that will be conducted within the facility to be designed and constructed by Design/Builder, and the materials involved in those activities, is superior to Design/Builder's knowledge. Accordingly, and anything contained in this Agreement to the contrary notwithstanding, any duty or warranty by Design/Builder hereto shall not apply to the discharge, dispersal, escape, release or saturation of any **pollutant** into the atmosphere or any body of water or on, onto, upon, in or into the surface or subsurface of land resulting from Owner's operations. For purposes of this section the word **"pollutant"** shall mean any solid, liquid, gaseous, or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkaline, chemicals and wastes and shall include any **Hazardous Substance**. The capacity of the facility and the design of any of its parts, so as to prevent the

4

escape, release, discharge, dispersal or saturation of **pollutants** shall be the sole responsibility of the Owner.

11.10.4.1 Encountering **Hazardous Substances**. In the event Design/Builder or its Subcontractors encounter on the Project site material reasonably believed to be **asbestos**, **polychlorinated biphenyl** ("PCB") or other **"Hazardous Substances"** as defined in paragraph 11.10.4.4 which has not been rendered harmless, Gray shall immediately stop Work in the area affected and report the condition to the Owner in writing. The Work in the affected area shall be resumed (1) in the absence of any **Hazardous Substances**, (2) when any **Hazardous Substances** have been rendered harmless, (3) by written agreement of the Owner and Gray, or (4) in accordance with the final determination under Article 10.

11.10.4.2  Working Conditions. Neither Design/Builder nor any Subcontractor shall be required without their consent to perform any Work relating to **asbestos**, **PCB**, or other **Hazardous Substances**.

*11.10.4.3  Owner's Indemnification Responsibilities. To the fullest extent permitted by law, the Owner shall defend, indemnify and hold harmless Design/Builder, its Subcontractors, Suppliers, consultants, agents and employees from any and all claims, liability, damages and expenses (including attorneys fees and expenses) arising out of or resulting from:*

*(a)  Any claim, suit, or legal proceeding to recover damages for wrongful death, bodily injury, illness or disease or injury to or destruction on tangible property alleged to be caused either directly or indirectly by any **substances, condition, element, or material** or any combination of the foregoing: (a) **produced** by Owner or **emitted or released** by Owner either intentionally or unintentionally, from the facilities designed and/or constructed by Design/Builder for the benefit of Owner, or (b) used by Design/Builder or incorporated by*

5

*Design/Builder into the Work herein agreed to be performed by Design/Builder for the benefit of Owner if specifically required by Owner or if necessary for the planned use of the work and to the extent not caused by the **mishandling of such substances, condition, element, or material** by Design/Builder, it Subcontractors, suppliers, consultants, agents, and employees.*

(b)   Performance of the Work in the affected area if in fact the material is **asbestos**, **PCB**, or other **Hazardous Substances**, and has not been rendered harmless, provided that such claim, damages, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and to the extent not caused by the negligent act or omission of Design/Builder, its Subcontractors, suppliers, consultants, agents and employees.

11.10.4.4   Definition of **Hazardous Substances**.  For purposes of this Agreement, the term **"Hazardous Substances"** means any substance, including solid, liquid or gaseous material which is **listed or defined as "Hazardous"** in the **Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"),** 42 U.S. Section 1251, et seq., **or regulation promulgated pursuant thereto**; and source, special, nuclear, or by product material as defined by the **Atomic Energy Act of 1954**, 42 U.S.C. Section 3011, et seq., **or any regulations promulgated pursuant thereto**; and includes any other substance defined by federal state or local statute, regulations, or ordinance as **hazardous, toxic, or dangerous waste or substance**.

(Contract, Doc. 77-1, Ex. A) (Emphasis added to denote placement within Subsection 11.10.4 of the indemnity provision relied upon by Gray and to showcase the subject matter).[2]

As the Court is most likely well aware, this case arises out of the bodily harm and property damages suffered as a result of the October 17, 2006 collapse of the roof over the administrative office at the Hwashin facility. (*See, e.g.*, Complaint ¶ 14, Doc. 2, Att. #1). Obviously, the issues in this case in no way implicate paragraph 11.10.4.3's indemnity obligations which clearly and unambiguously apply to the encounter of Hazardous Substances. More specifically for purposes of the present motion, ***Gray has failed to allege any fact which could conceivably implicate Hwashin's duty to indemnify upon an encounter of a Hazardous Substance or other pollutant.***

Under Alabama law, the determination of whether a written contract is ambiguous is a question of law for the court, which is subject to *de novo* review. *Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 796 (11th Cir. 1996) (citing *Vulcan Painters, Inc. v. MCI Constructors, Inc.*, 41 F.3d

---

[2]     Additionally, it is telling to note that Section 11.5 of the Contract addresses general contractual indemnification. However, language creating the right to indemnification of the Design/Builder, outside of the limited context to which paragraph 11.10.4.3 applies, is not included in this Section of the Contract, nor is it found anywhere else in the contract.

1457, 1460 (11th Cir. 1995); *Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co.*, 662 So. 2d 314, 316 (Ala. 1993)). Furthermore, "in the absence of ambiguity, the court cannot interpret the contract but must take it as it is written." *Id.* (quoting *Darling Shop of Birmingham v. Nelson Realty Co.*, 52 So. 2d 211 (Ala. 1951)). Likewise, the determination of whether the scope of a contract provision encompasses a party's claims is a matter of contract interpretation. That interpretation is guided by the intent of the parties, which, absent ambiguity, is evidenced by the plain meaning of the provision. *See Serra Chevrolet, Inc. v. Reylander*, --- So. 2d ----, 2007 WL 1723551, *5 (Ala. June 15, 2007) (citing *Ex parte Discount Foods*, *Inc.*, 789 So. 2d 842, 844 (Ala. 2001)).

Gray's claim for contractual indemnity is due to be dismissed pursuant to Rule 12(b)(6) because the contract language relied upon by Gray clearly and unambiguously applies only to the encounter of Hazardous Substances or other pollutants, which has not been alleged by any stretch of the imagination. Gray has stated no basis for relief pursuant to the contract provision upon which it relies.

First, Section 11.10 is entitled "**Site Conditions/Environmental Matters**." No site conditions or environmental matters are in any way implicated in this entire lawsuit. Subsection 11.10.4 is entitled "**Pollutants**

**from Owner's Operations**." The indemnity provision relied upon by Gray, paragraph 11.10.4.3, is a paragraph under Subsection 11.10.4.  There has been no allegation of any encounter of a Hazardous Substance by Gray or any other party to this lawsuit.  Gray does not allege, and cannot seriously contend, that the debris which it alleges Hwashin allowed to clog the roof drains by allegedly failing to maintain the roof drainage system is a Hazardous Substance.  (Doc. 26, ¶ 35).  Even if this case were about an environmental condition, to survive a motion to dismiss, Gray would have to allege that the Hazardous Substance which it encountered, and for which it is seeking indemnification under paragraph 11.10.4.3, was actually a Hazardous Substance as defined in paragraph 11.10.4.4.[3]   The definition, quoted above, clearly does not encompass mere "debris."

Under no reading of Gray's third party claim for contractual indemnity can Gray recover pursuant to the unambiguous indemnity provision relied upon by Gray.  Therefore, the claim is due to be dismissed under Rule 12(b)(6) for failure to state a claim.

**B.    Gray's Claim for Common Law Indemnity is Barred by ALA. CODE § 25-5-4 and the Rule of No Indemnity Between Joint Tortfeasors.**

---

[3]     For obvious reasons, Gray does not go so far as to allege that the roof collapse was caused in any way by a Hazardous Substance. (Doc. 26).

Gray next attempts to seek indemnification from Hwashin based upon common law indemnity. (Doc. 62, ¶¶ 11-15). As aptly demonstrated by counsel for Firestone Building Products Company, LLC ("FBP") in its Motion to Dismiss Third Party Complaint (Doc. 57) and Reply to Gray's Response to Motion to Dismiss Third Party Complaint (Doc. 79), this claim is due to be dismissed pursuant to Rule 12(b)(6). Accordingly, Hwashin fully adopts herein by reference the law and facts discussed and the arguments made by FBP in support of the premise that in Alabama, there is no contribution between joint tortfeasors, thus the common law indemnity claim as alleged by Gray is due to be denied. (*See* Doc. 57 & 79).

Gray cannot assert a claim for common law indemnification against Hwashin for two reasons: (1) because the exclusivity of remedy provision of the Alabama Worker's Compensation Act, and (2) because there is no substantive right to contribution among joint tortfeasors.

>     **(i)     Absent an Applicable Contractual Indemnity Agreement, Hwashin is Immune From Liability Outside of the Payment of Worker's Compensation Benefits.**

Under Alabama law, subject to certain inapplicable exceptions, an employer cannot be held liable for the injury or death of an employee beyond its liability under the Alabama Worker's Compensation Act's

exclusivity of remedies provision. ALA. CODE § 25-5-4 (1975). It follows that pursuant to Section 25-5-4, a third party charged with liability for the injury or death is barred from seeking non-contractual indemnification from the employer. *See Paul Krebs & Assoc. v. Matthews & Fritts Const. Co., Inc.*, 356 So.2d 638 (Ala. 1978) ("To allow a third party tortfeasor to recover over against the employer for injury to an employee would be to allow indirectly what is prohibited directly."; *Gunter v. U. S. Fidelity & Guaranty Co.*, 340 So. 2d 749, 750 (Ala. 1976) (the general contractor, charged with active negligence in furnishing and maintaining a scaffold, could not implead the subcontractor, employer of decedent, in a wrongful death action).[4]

Thus, Gray's claim against Hwashin for common law indemnity is due to be dismissed.

---

[4]     After the *Krebs* decision, the Alabama Supreme Court partially reversed itself by allowing third party tortfeasors to seek indemnification pursuant to an **express contractual indemnity obligation**. *The Goodyear Tire and Rubber Co. v. J.M. Tull Metals Co.*, 629 So. 2d 633, 638 (Ala. 1993) (stating "[w]e emphasize that our holding … is limited to the enforcement of *express* contracts of indemnification. The consideration of this rule in the context of *implied* contracts of indemnification is not raised in this appeal.") (emphasis in original). Thus, while the exclusivity provision of the workers' compensation act might not preclude an indemnification claim that is based upon an express contract provision, it does bar a common law indemnity claim against an employer.

### (ii)    Joint Tortfeasors Are Not Entitled to Contribution or Indemnity in Alabama.

The Alabama Supreme Court has consistently held that joint tortfeasors are not entitled to contribution or indemnity. *See Consolidated Pipe and Supply Co. v. Stockham Valves and Fitting, Inc.*, 365 So. 2d 968, 970 (Ala. 1978) ("No authority need be cited to support the proposition that there is no contribution among joint tortfeasors in Alabama."); *See also Humana Med. Corp. v. Bagby Elevator Co.,* 653 So. 2d 972 (Ala. 1995); *Apel Machine & Supply Co. v. J. E. O'Toole Engineering Co.*, 548 So.2d 445 (Ala. 1989); *Crigler v. Silac*, 438 So. 2d 1375 (Ala. 1983); *Parker v. Mauldin*, 353 So. 2d 1375 (Ala. 1977); *Gobble v. Bradford*, 147 So. 2d 619 (Ala. 1938); *Vandiver and Co. v. Pollack*, 19 So. 180 (Ala. 1894).

Gray only alleges that Hwashin failed to maintain the roof drainage system by allowing debris to clog the drains, which it alleges caused the collapse.  Gray apparently attempts to clothe its right to claim common law indemnity in the distinction between active and passive negligence.[5] (Doc.

---

[5]    When joint tortfeasors are in pari delicto, that is, when each is chargeable with active or affirmative negligence contributing to the injury for which recovery is sought, neither is entitled to indemnity from the other under common law indemnity principles. 41 AM. JUR. 2d Indemnity § 22. Thus, a party may not seek common-law indemnity **where the primary complaint alleges active, rather than passive, liability.** *See, e.g., Lakeside Oakland Development, L.C. v. H&J Beef Co.*, 644 N.W.2d 765 (Mich. 2002).

26, ¶ 59, 60).   However, the Piggott's complaint clearly alleges active negligence on Gray's behalf.

Additionally, Gray undertook the affirmative duty of responsibility to Hwashin that it would be responsible for the quality of the design and construction services provided by its subcontractors pursuant to the following provision of the Contract:

> 3.1.3     The Design/Builder shall be responsible to the Owner for the quality of the design services and for the quality of the construction performed by Design/Builder's employees, subcontractors and their agents or employees.

(Doc. 77-1, Exhibit A). Throughout Gray's Third Party Complaint, Gray alleges that various subcontractors—hired by Gray—are responsible for the collapse of the roof at the Hwashin facility, including Cooper Steel Fabricators, Inc., All-South Subcontractors, Inc., Freeland-Harris Consulting Engineers of Kentucky, Inc., Freeland-Harris Consulting Engineers of Georgia, Inc., The Hardy Corporation and Latta Plumbing & Construction, Inc.  Gray admits that it either subcontracted directly with the entity named above or that the entity was a sub-subcontractor on the Project, hired by a party that was hired by Gray.  (Doc. 26, ¶¶ 9, 18, 20, 22, 23).  Gray also alleges specific failures in the quality of the design or construction services provided by these parties—which it hired—which caused the collapse of the

roof. (Doc. 26, ¶¶ 40, 45, 50, 55, 65, 66, 111, 115, 119, 123 & 127). Through Gray's own Third Party Complaint, it is clear that Gray cannot shrug off the affirmative contractual duty that it undertook with respect to Hwashin to be responsible for the failures of these parties in order to plead an exception to the rule against contribution among joint tortfeasors applies against Hwashin.

Thus, Gray is in no position to, and indeed did not, plead the kind of freedom from active fault that would entitle it to assert a claim for common law indemnity under Alabama law. Furthermore, the Piggotts charge Gray with active negligence in their original and amended complaints. Finally, because Gray failed to plead an applicable contractual indemnity agreement, and indeed none exists, Hwashin cannot be held liable to Gray for Mrs. Piggott's injuries. Therefore, the claim is due to be dismissed under Rule 12(b)(6) for failure to state a claim.

## II.    GRAY'S THIRD PARTY CLAIMS AGAINST HWASHIN SHOULD BE DISMISSED AS IMPROPER.

### A.    Gray Should Have Filed Its Third Party Claims Against Hwashin as Compulsory Counterclaims in Response to the Complaint in Intervention.

On May 22, 2007, Hwashin filed its Complaint in Intervention. (Doc. 20). On May 25, 2007, Gray filed its Answer to Hwashin's Complaint in

Intervention ("Answer"), which includes affirmative defenses which implicate Hwashin's independent rights and interests with regard to the issues of causation and alleged responsibility for the roof collapse. (Doc. 21). On the same day, Hwashin filed a Motion for Extension of Deadline Scheduling Order (Doc. 22), which the Court granted in part and denied in part on May 29, 2007, requiring the parties to file Motions for Leave to Amend the pleadings and to add new parties by June 29, 2007. (Doc. 23).

On June 7, 2007, less than two weeks after Gray's Answer was filed, Gray moved for Leave to file its Third Party Complaint. (Doc. 24). The Court granted Gray's motion on June 7, 2007. (Doc. 25). Gray filed its Third Party Complaint against Hwashin on June 8, 2007 (Doc. 24), which embraces the same theories as the affirmative defenses raised against Hwashin by Gray in its Answer to Hwashin's Complaint in Intervention.

At the time Gray served its Answer to Hwashin's Complaint in Intervention, it is clear that Gray already had the claims it subsequently asserted against Hwashin in the Third Party Complaint which arose out of the very same transaction or occurrence that is the subject matter of the claims that Hwashin asserts against Gray. Thus, Gray's claims against Hwashin should have properly been filed as compulsory counterclaims within the time allowed pursuant to Rule 13(a) of the Federal Rules of Civil

Procedure.   As such, Gray's Third Party claims against Hwashin are improper and due to be dismissed.

**B.     Gray's Third Party Claims Against Hwashin Disrupt the Proper Alignment of the Parties and Will Confuse the Jury.[6]**

Gray's Third Party claims against Hwashin are improper and will confuse the jury.   If Gray's claims against Hwashin are not dismissed, Hwashin will be both the Plaintiff in Intervention (with claims asserted against Defendant Gray) and a Third Party Defendant (with Third Party Plaintiff Gray asserting claims against it).   Both parties were already parties to the lawsuit before Gray served its Third Party Complaint.   Thus, Gray's use of Rule 14(a) to assert its claims against Hwashin is improper.

In *Nat'l Fire Ins. Co. of Hartford v. Daniel J. Keating Co.*, 35 F.R.D. 137 (W.D. Penn. 1964), three third party defendants moved to strike a third party complaint brought against them.   The plaintiff insurance companies claimed to be the subrogees of four insureds.   *Id.* at 138.   The insurance

---

[6] Not only should the Third Party claims asserted against Hwashin have been brought as compulsory counterclaims; Gray has also attempted to circumvent the full, fair and just disposition of the parties' claims and defenses arising out of the collapse of the roof at the Hwashin facility by filing a separate action for payments allegedly due under the original contract between Hwashin and Gray. *Gray Construction, Inc. v. Hwashin America Corp.,* Case No. 2:07–cv–00584-WKW-SRW.   The claims asserted involve the very same contract which Gray had already placed squarely at issue in the present action.

companies sought to recover money that they paid to their insureds for fire damage allegedly caused by the defendant. *Id*. The defendant then denied liability and named three of the subrogors/insureds as third party defendants alleging that they had negligently caused the fire. *Id*. The court held that "a third party complaint *does not lie* under such circumstances." *Id*. at 139 (emphasis added). The court stated that if the defendant wants to blame the subrogors/insureds, it can do so at trial under its general denial of liability. *Id*.

> In striking the third party complaint the court stated:

>> If permitted [to join the subrogors as third party defendants], confusion would be added to an already complex jury trial. Of course, the defendant may join allegedly negligence persons other than the indemnified insureds as third parties … and demand judgment against them for all or part of the sums that may be adjudged against the defendant in favor of the plaintiffs, but this the defendant has not done.

*Id*. at 140. The court went on to state: ***"Bringing in a subrogor as a third party creates unnecessary complications and tends to multiply issues. For the subrogor of a plaintiff to appear also in the role of a third party defendant, will, to say the least, be difficult to explain to a jury and will serve only to confuse that body."*** *Id*. (emphasis added). Thus, the court would not permit a third party complaint to lie against the insured-subrogors of the plaintiff insurance company.

In *American Fire and Cas. Co. v. Material Handling Supply Inc.*, 2007 WL 1296200 (D.N.J. 2007), the plaintiff insurer sought to recover from the defendant for money paid out after a fire occurred at its insured's building. The defendant moved for leave to file a third party complaint against some of the plaintiff's insureds. *Id*. at *1. The insurer argued that its subrogors could not be liable to it as a matter of law, thus the third party complaint failed to state a cause of action. *Id*. The court held, "the defendant need not join as third parties those insureds . . . in order to defend on the grounds that the fire loss was caused by the sole or joint negligence of any of them." *Id*. The court concluded that "the presence of the subrogors would serve no legal purpose or be of any legal benefit."[7] *Id*. Because the insurer had no independent basis of liability against its own insureds, a third party complaint was improper and the court denied the defendant's motion for leave to file. *Id*. at *3.

If Gray is allowed to assert a third party complaint against Hwashin, it would raise the exact same sort of problems as in *National Fire Insurance Co.* and *American Fire & Casualty Co.*—but worse. First of all, it would certainly tend to confuse and multiply the issues. Second, if it would be

---

[7] The court noted that "because the insurer stands in the shoes of its insured, a subrogee's rights can rise no higher than those of its subrogor." *Id*. at *2. Thus, clearly a defendant can assert all of the defenses that it has against the plaintiff's insureds. *Id*.

difficult to explain to the jury why subrogors of the plaintiff are appearing as third party defendants, as was the case in *National Fire Insurance Co.* and *American Fire & Casualty Co.,* it would be even more difficult to explain why the ***named plaintiff*** is appearing as an intervener ***and*** as a third party defendant. Thus, this Court should not allow Hwashin to be brought in as a third party defendant and should instead grant Hwashin's Motion to Dismiss Gray's Third Party Complaint as it applies to Hwashin.

WHEREFORE, above premises considered, Hwashin respectfully moves the Court dismiss Gray's Third Party Complaint against it.

Respectfully submitted,

/s/ William Christopher Waller, Jr.__
William Christopher Waller, Jr.
James A. Rives, Esquire
Attorneys for Intervener
Hwashin America Corp.

**OF COUNSEL:**
**Ball, Ball, Matthews & Novak P.A**.
Post Office Box 2148
Montgomery, AL  36102-2148

/s/J. Lister Hubbard
**J. LISTER HUBBARD  (HUB007)**
**RICHARD H. ALLEN (ALL053)**
**ARDEN REED PATHAK (PAT072)**
Attorneys for Intervener
Hwashin America Corp.

OF COUNSEL:
**CAPELL & HOWARD, P.C.**
Post Office Box 2069
150 South Perry Street
Montgomery, Alabama  36102-2069
334/241-8000

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

| | |
|---|---|
| Jere L. Beasley, Esquire<br>Julia Ann Beasley, Esquire<br>Beasley, Allen, Crow, Methvin,<br>  Portis & Miles, P.C.<br>Post Office Box 4160<br>Montgomery, AL  36103-4160 | James A. Rives, Esquire<br>William Christopher Waller, Jr.<br>Ball, Ball, Matthews & Novak P.A.<br>Post Office Box 2148<br>Montgomery, AL  36102-2148 |
| Thomas T. Gallion, III, Esquire<br>Constance C. Walker, Esquire<br>Felicia Abernathy Long, Esquire<br>Haskell, Slaughter,<br>  Young & Gallion, LLC<br>305 South Lawrence Street<br>Montgomery, AL   36104 | Albry Joe Peddy, Esquire<br>Robert B. Stewart, Esquire<br>Smith, Spires & Peddy, P.C.<br>2015 Second Avenue North<br>Suite 200<br>Birmingham, AL  35203-3711 |
| Brian Michael McClendon, Esquire<br>Elliot Britton Monroe, Esquire<br>Mickey B. Wright, Esquire<br>Lloyd, Gray & Whitehead, P.C.<br>2501 Twentieth Place South<br>Suite 300<br>Birmingham, AL  35223 | Charles Keith Hamilton, Esquire<br>Bainbridge, Mims, Rogers &<br>Smith<br>Post Office Box 530886<br>Birmingham, AL  35253 |
| Linda C. Ambrose, Esquire<br>Rogers & Associates<br>3000 Riverchase Galleria<br>Suite 650<br>Birmingham, AL  35244 | John S. Somerset, Esquire<br>Sudderth & Somerset<br>5385 First Avenue North<br>Birmingham, AL  35212 |

| | |
|---|---|
| John S. DeShazo, Esquire<br>John M. Laney, Jr., Esquire<br>Post Office Box 43798<br>Birmingham, AL  35243-0798 | Constance C. Walker, Esquire<br>Felicia Abernathy Long, Esquire<br>Thomas T. Gallion, III, Esquire<br>Haskell, Slaughter, Young &<br>Gallion, LLC<br>305 South Lawrence Street<br>Montgomery, AL  36104 |
| Larry W. Harper, Esquire<br>Porterfield, Harper, Mills & Motlow<br>Post Office Box 530790<br>Birmingham, AL  35253-0790 | |

/s/J. Lister Hubbard
**J. LISTER HUBBARD  (HUB007)**