## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

JENNIFER PIGGOTT and     *
SLADE PIGGOTT,       *
          *
 Plaintiffs,       *   File Number CV-06-1158-F
v.           *
          *
GRAY CONSTRUCTION, INC.,    *
          *
 Defendant.      *
          *
          *
HWASHIN AMERICA CORP.,     *
          *
 Intervener Plaintiff,    *
          *
v.           *
          *
JAMES N. GRAY COMPANY, a/k/a   *
GRAY CONSTRUCTION, INC.,    *
GNF ARCHITECTS AND      *
ENGINEERS, PSC, HARDY     *
MECHANICAL CO., INC., FREELAND   *
HARRIS CONSULTING  ENGINEERS OF *
GEORGIA, INC., FREELAND HARRIS   *
CONSULTING ENGINEERS OF    *
KENTUCKY, INC.,  ALL-SOUTH    *
SUBCONTRACTORS, INC.,  MID    *
SOUTH ROOF SYSTEMS, INC.,    *
COOPER'S  STEEL FABRICATORS,   *
INC.,  LATTA PLUMBING &     *
CONSTRUCTION CO., INC., and    *
FIRESTONE BUILDING PRODUCTS   *
COMPANY, LLC        *
          *
 Defendants.      *

**HWASHIN AMERICA CORPORATION'S REPLY
TO GRAY CONSTRUCTION, INC.'S OPPOSITION
TO MOTION FOR LEAVE TO AMEND
<u>COMPLAINT IN INTERVENTION</u>**

Comes now Hwashin America Corporation ("Hwashin") and hereby submits this Reply to Gray Construction, Inc.'s Opposition to Motion for Leave to Amend Complaint in Intervention.

## I. HWASHIN'S AMENDED COMPLAINT SHOULD BE ALLOWED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(A)

### A. Fed. R. Civ. P. 15(a), Rather Than 24(b), Controls This Issue.

Gray bases its entire opposition to Hwashin's amended complaint on the premise that Hwashin should not be allowed to permissively intervene in this action pursuant to Fed. R. Civ. P 24(b). Gray makes this argument despite the fact that Hwashin has already been allowed to intervene as a plaintiff in this action (Doc. 17, 20), and despite the fact that Gray has named Hwashin a third party defendant. (Doc. 26) Contrary to Gray's premise, Hwashin's Motion for Leave to File its Amended Complaint in Intervention should be analyzed pursuant to Fed. R. Civ. P. 15(a) (Amended and Supplemental Pleadings), not Fed R. Civ. P. 24(b) (Permissive Intervention).

Rule 15(a) states, in pertinent part, that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and **leave shall be freely given when justice so requires**." (Emphasis added). The

decision whether to grant leave to amend is committed to the sound discretion of the district court. *Espey v. Wainwright,* 734 F.2d 748, 750 (11th Cir. 1984). "However, 'discretion' may be a misleading term, for Rule 15(a) severely restricts the judge's freedom, directing that leave to amend shall be freely given when justice so requires.'" *Id.* (Citations omitted). The party opposing the amendment bears the burden of demonstrating to the district court that there is a substantial reason not to allow the amendment. *Loggerhead Turtle v. County Council of Volusia County, Florida,* 148 F.3d 1231, 1257 ("There must be a 'substantial reason … to deny leave to amend[.]'"); *Espey v. Wainwright,* 734 F.2d at 750. Substantial reasons to deny a motion for leave include (i) undue delay in bringing the amendment, (ii) bad faith or dilatory motive on the part of the movant, (iii) repeated failure to cure deficiencies by amendments previously allowed, (iv) undue prejudice to the opposing party by virtue of allowance of the amendment, and (v) futility of amendment. *Loggerhead Turtle v. Volusia County,* 148 F.3d at 1255 (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Gray has not alleged, nor could they hope to prove, any bad faith or dilatory motive on the part of Hwashin, any repeated failure by Hwashin to cure deficiencies by amendments previously allowed or futility of the amendment. Rather, Gray claims that to allow the amendment would result in undue delay in

Piggott's personal injury case and undue prejudice to Gray.  For the reasons set forth below, Gray's position is unsupportable.

**B.    Gray Has Not Demonstrated That Any Undue Delay or Undue Prejudice Will Result From the Amendment.**

**1.    Hwashin's Motion for Leave to Amend Was Filed in Compliance With the Court's Scheduling Order.**

Hwashin filed its motion for leave to amend within the time limits provided in the Court's Scheduling Order.  (Doc. 7, 23).  Thus, any analysis of undue delay and undue prejudice could probably end there.

**2.    Hwashin's Claims are Nearly Identical to Those of the Piggotts and Are Closely Related to Gray's Third Party Claims.**

It is important to note that the Piggotts (the original plaintiffs in this action) have not objected to Hwashin's motion for leave to amend its complaint.  Further, the Piggotts' claims are nearly identical to Hwashin's claims.  The injuries to the Piggotts and the damages sustained by Hwashin result from a single occurrence – the collapse of the roof at the Hwashin facility.  Throughout its opposition, Gray repeatedly states, without much analysis, that the introduction of Hwashin's claims for property damage will unduly delay the resolution of this case and will prejudice Gray.  In a rather frivolous attempt to distinguish the Piggotts' claims for personal injury from Hwashin's claims for property damage, Gray states that Hwashin's property damage claims are "not related to Mrs. Piggott's injuries" (Doc. 77-1, p.

4

4), Hwashin's property damage claims have "absolutely nothing to do with Mr. and Mrs. Piggotts' alleged injuries" (Doc. 77-1, p. 4) and that Hwashin's claims are "unrelated claims" to Mr. and Mrs. Piggott's claims. (Doc. 77-1, p. 6). It is hard to imagine how Gray can make such assertions in good faith. The Piggotts' personal injury claims and Hwashin's property damage claims arise from the very same occurrence, *i.e.,* the roof collapse. Along with other claims, both the Piggotts and Hwashin allege that Gray caused the roof collapse and thereby caused their injuries. Indeed, the proposed amended complaint of the Piggotts and that of Hwashin are remarkably similar, including shared counts of (i) negligence, (ii) wantonness, and (iii) negligent hiring, training and supervision against Gray. The Piggotts and Hwashin will rely on the same facts and testimony in proving Gray's liability. The only difference will be each party will present testimony of its own specific damages. It is hard to imagine how the claims of two different parties could be related any closer.

Hwashin acknowledges that in order to prove its property damages, it will have to call additional witnesses that would not be necessary to prove the Piggotts' claims. However, this type of incidental delay and expense is the type that arises with any amendment to an original pleading and is not a substantial reason to deny

the amendment. *Loggerhead Turtle v. Volusia County,* 148 F.3d at 1257.[1] Further, such testimony regarding Hwashin's property damage will almost certainly be a part of this case one way or another; either in support of Hwashin's claims in its amended complaint (if allowed) or, if necessary, in support of counterclaims brought by Hwashin to Gray's third party complaint. (See Section I.3 below). Lastly, Hwashin notes that the issues that will likely take the most time to litigate in this case are those of negligence (*i.e.,* duty and breach of duty)[2] and causation. Both the negligence of Gray and causation for the roof collapse are already an issue in this lawsuit, both under the Piggotts' claims (in original complaint and proposed amended complaint) and pursuant to Gray's Third Party Complaint.

---

[1]     In allowing the amended complaint in *Loggerhead Turtle,* the Eleventh Circuit noted that "[a]ny amendment to an original pleading necessarily involves *some* additional expense to the opposing party." *Id.*

[2]     Gray, without case citation, alleges that although both the Piggotts and Hwashin have stated negligence claims against it, the issue of duty for purposes of the shared negligence claims will differ. Gray asserts that the duty it owed to Hwashin will be established based upon the terms of its contract with Gray, whereas Gray's duty to the Piggotts would be based on a "common law" duty since it had no contract with the Piggotts. Gray's argument overlooks clear Alabama Supreme Court precedent that establishes that the negligence duty owed by a party on a construction project to a third party with whom it does not have a contract can be based upon the duties that party accepted in its construction contract, *i.e.,* the Piggotts likely will base their negligence claim, at least in part, on an argument that Gray's duties to them are those that are contained in its contract with Hwashin. *Berkel & Co. Contractors, Inc. v. Providence Hosp.,* 454 So. 2d 496, 502 (Ala. 1984) (a duty to a third party can be established solely by duties set forth in a collateral construction contract, so long as the proper performance of those duties was reasonably relied upon by the third party and the harm caused to the third party was reasonably foreseeable).

### 3.    Hwashin's Property Damage Claims Will Likely Be A Part of This Lawsuit in One Form or Another

Practically speaking, there will be no delay or prejudice to Gray should the Court allow the amended complaint. If Gray's third party complaint survives the motion to dismiss stage,[3] Hwashin can bring these very same claims as counterclaims to Gray's third party complaint. Federal Rule of Civil Procedure 14(a) states that a third party defendant can bring counterclaims against the third party plaintiff in accordance with Rule 13. Since Gray's third party complaint against Hwashin, and Hwashin's claims for property damage, arise out of the same occurrence (*i.e.,* the roof collapse at the Hwashin facility) Hwashin would be entitled to bring these claims as counterclaims. Thus, Gray, by filing its third party complaint, has assured itself that Hwashin's claims for property damage will be heard in this case, in one form or another. Thus, Gray's claims of undue delay and prejudice arising from the amended complaint ring particularly hollow.

### 4.    No Significant Discovery Occurred Between the Filing of Hwashin's Original Complaint in Intervention and Its Motion for Leave to Amend.

Between the time of the filing of the original complaint in intervention and the filing of the motion for leave to amend, no substantive discovery took place. Further, the only significant action taken by Gray in this period was the filing of its

---

[3]    Hwashin's responsive pleading to Gray's third party complaint is due July 23, 2007. (Doc. 66).

7

third party complaint, which in no way would have been effected (with respect to Hwashin) had Hwashin filed its motion for leave to amend earlier. In essence, there has been nothing more than the "mere passage of time" and Gray's rights were not prejudiced by Hwashin not pleading these claims in its original complaint in intervention. *Loggerhead Turtle v. Volusia County,* 148 F.3d at 1257 (mere passage of time is not enough to show undue delay or undue prejudice necessary to prevent an amendment).

### 5.    Gray's Other Claims of Undue Delay and Undue Prejudice Are Frivolous.

Gray warns that should Hwashin's amended complaint be allowed, Hwashin's insurance carrier, and other unnamed parties, will likely seek to intervene in this action (Doc. 77-1, p. 12). This is pure speculation on the part of Gray. Further, the Court can deal with such motions to intervene on their own merits, if and when they arise. Lastly, it is hard to imagine that there are any other parties related to the actual construction project at issue in this case that could be made parties to this action.

Without much explanation, Gray also claims it would be unduly prejudiced by allowing the amended complaint because issues related to Hwashin's insurance coverage will come out. (Doc. 77-1, p. 12). Gray apparently contends that the mere mention of insurance in this case would somehow prejudice Gray's defense of the Piggotts' claims. Gray provides no explanation of how the mention of

8

Hwashin's insurance coverage will prejudice its defense of the Piggotts' personal injury claims, and Hwashin sees no reasonable basis for such a fear.[4]  Curiously, Gray states that "Mr. and Mrs. Piggott will also be prejudiced by having to endure the substantial delay in these proceedings while discovery proceeds on Hwashin's property damage claims."  (Doc. 77-1, p. 12).  As noted, the Piggotts have not objected to Hwashin's amended complaint.

Hwashin also notes that Gray does not seem particularly anxious to get to trial.  Gray has not conducted any substantial discovery to date, and has added numerous parties by its third party complaint, which will obviously delay the case. Thus, Gray's protestations of undue delay based upon Hwashin's amended complaint, particularly when almost all of the issues raised by the amended complaint are issues raised in Gray's own third party complaint, should not be given much weight.  *Loggerhead Turtle v. Volusia County,* 148 F.3d at 1257.

### 6. Gray's Solutions to This Procedural Dispute Are Unworkable.

In its opposition, Gray first suggests that Hwashin should pursue its claims for property damage by filing its own separate action in this Court.  (Doc. 77-1, p. 13).  This suggestion is made by Gray despite the fact that in addition to the

---

[4]      Gray also cites to other provisions in its contract with Hwashin which will have to be argued if the amended complaint is allowed and claims that those additional issues will unduly delay the case.  However, as noted above, these contract issues are going to be a part of this lawsuit, either in defense of Hwashin's claims under the amended complaint, or, as Gray would apparently prefer, in defense of counterclaims brought by Hwashin to Gray's third party complaint.

present action, Gray has instituted another action in this Court against Hwashin which relates to the roof collapse. *Gray Construction, Inc. v. Hwashin America Corp.,* Case No. 2:07–cv-00584-WKW-SRW. Apparently, Gray thinks it is an economical use of judicial resources to have three cases pending in the same court which arise from the same occurrence. Gray's suggestion is utter nonsense.

Gray next suggests that Hwashin should be forced to bring these claims as counterclaims in Gray's parallel case. (Doc. 77-12, p. 13). Hwashin notes that its responsive pleading in the parallel case is not due until July 31. (CV-07-584, Doc. 5). At this time, Hwashin will simply note that it doubts that action will survive a motion to dismiss and/or motion to consolidate due to the pendency of this action. Nevertheless, Gray will have to defend Hwashin's claims for property damage in this case, either pursuant to the claims in the amended complaint or by counterclaims to its third party complaint, if necessary.

Based upon the foregoing, it is clear that Gray failed to prove there is a substantial reason why the amendment should not be allowed. Thus, Hwashin's motion for leave to amend its complaint should be granted.

## II.    EVEN IF THE COURT WERE TO ANALYZE HWASHIN'S MOTION FOR LEAVE UNDER RULE 24(B), IT SHOULD BE GRANTED.

Federal Rule of Civil Procedure 24(b) states that permissive intervention should be allowed "when an applicant's claim or defense and the main action have a question of law or fact in common." As this Court has stated, Rule 24(b) "allows

permissive intervention if the application to intervene is timely, and if the intervenor's claim or defense and the main issue of the cause have a common question of fact." *Meadors v. Knauf Fibreglass,* 2005 WL 2290319 (M.D. Ala. Sept. 20, 2005). If the application is timely, and there is such an overlap of a question of law or fact, joinder is appropriate; unless, in exercising its discretion, this court determines that "intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[5] *Id.* As noted above, Hwashin's motion for leave to amend the complaint was filed in accordance with this Court's Scheduling Order.

Further, as detailed above, there are numerous questions of law and fact between Hwashin's claims and the claims of the Piggotts, and also common questions of law and fact between Hwashin's claims and Gray's third party claims. As detailed above, the Piggotts' claims and Hwashin's claims (as well as Gray's third party complaint) all arise from the same roof collapse and the Piggotts and Hwashin share many of the same theories of recovery against Gray. The only significant <u>difference</u> between the Piggotts' claims and Hwashin's claims is the proof of damages, *i.e.,* the Piggotts will introduce evidence establishing their personal injuries and Hwashin will introduce evidence establishing its property damages. Thus, Gray is, in essence, asking this Court to stand Rule 24(b)'s

---

[5]    Again, Hwashin notes that the Piggotts have not objected to Hwashin's amended complaint.

standard on its head.  Instead of allowing permissive intervention when there is one common issue of law and fact between the intervenor and the main case, Gray wants this Court to adopt a rule in which intervention is precluded if there is one material difference.  Gray's suggestion is unsupportable.

As set forth in Section II, there will be no undue delay or undue prejudice should the motion for leave to amend the complaint be granted.  As such, whether analyzed under Rule 15(a) or 24(b), Hwashin's motion for leave to amend the complaint should be granted.

III.    **HWASHIN HAS BEEN A REAL PARTY IN INTEREST SINCE THE MOTION TO INTERVENE WAS FILED IN THIS ACTION AND A PARTY PLAINTIFF SINCE THE MOTION WAS GRANTED.**

On December 28, 2006, Hwashin filed its Motion to Intervene in this action while this case was still pending in the Butler County Circuit Court.  (Doc. 2, Exhibit B)  The original Complaint in Intervention claims compensation from Gray based upon the Alabama Self-Insurance Worker's Compensation Fund's (the "Fund") subrogation rights and upon indemnity. (Id.). On December 29, 2006, Gray removed this action to this Court. (Doc. 2).

On January 10, 2007, this Court ordered Gray to show cause as to why Hwashin's Motion to Intervene should not be granted.  (Doc. 3).  On January 24, 2007, Gray responded by stating that it did not object to Hwashin's intervention by and through its worker's compensation carrier as long as discovery as to

12

Hwashin's interests and involvement in the case be allowed and also requested that "this Court prohibit intervener's interests and identity in the case from being made known to the jury." (Doc. 4). On May 16, 2007, this Court granted Hwashin's Motion to Intervene without any limitation or condition, and without any reference to the Fund. (Doc. 17).

On May 22, 2007, Hwashin filed its Complaint in Intervention. (Doc. 20). On May 25, 2007, Gray filed its Answer to Hwashin's Complaint in Intervention, which included multiple affirmative defenses (Eighth, Ninth and Tenth Affirmative Defenses) which implicate Hwashin's independent rights and interests, and not those of the Fund. (Doc. 21). Thus, Gray, in pleading these affirmative defenses directed solely at Hwashin, treated Hwashin as a party to this action.

More importantly, on April 23, 2007, Gray served Interrogatories and Requests for Production of Documents on Hwashin. True and correct copies of these discovery requests are attached hereto as Exhibits A and B. This discovery was served upon Hwashin pursuant to Fed. R. Civ. P. 33 and 34, which allow discovery only upon named parties, not upon non-parties. Had Gray taken the position that Hwashin was a non-party, it would have only been able to obtain material from Hwashin by attempting to issue a non-party subpoena pursuant Fed. R. Civ. P. 45. Gray's right to obtain "discovery" from Hwashin would have been narrower had it pursued a non-party subpoena, as opposed to serving

interrogatories and request for production pursuant to Rules 33 and 34. Gray should be estopped from arguing Hwashin is not a party to this action, when it took the position that Hwashin was a party when it previously suited its purposes.

On June 22, 2007, the Clerk's Office noticed the parties for deficiencies in the failure to file Corporate Disclosure/Conflict Statements. Included in the notice were Jennifer and Slade Piggott, Hwashin, Gray and Latta Plumbing. (Doc. 43). However, the Alabama Self-Insured Insurance Fund was not noticed nor was it required to file a corporate disclosure statement. On July 3, 2007, Hwashin filed its Conflict Disclosure Statement on its own behalf listing Hwashin America Ltd., its parent company, and Travelers Property Casualty Company of America, its insurance carrier, and Travelers Companies, Inc., the carrier's parent company. (Doc. 70).

Gray's present argument that Hwashin is not a party plaintiff to this action (and therefore its amended complaint should not be allowed) is further evidence of the procedural gamesmanship which Gray is perpetrating on the parties and this Court. Gray has asserted third party claims against Hwashin in this action which arise from the roof collapse. Gray should have brought those claims as compulsory counterclaims against Hwashin, instead of further complicating matters by attempting to bring improper third party claims against Hwashin. Not satisfied with this maneuvering, Gray has also filed a separate action for payments

allegedly due under the original contract between Hwashin and Gray which arise from the roof collapse. *Gray Construction, Inc. v. Hwashin America Corp.*, Case No. 2:07–cv-00584-WKW-SRW.    Gray's attempt to convince this Court that it really did not allow Hwashin to intervene in this case is just another part of Gray's strategy to disrupt the efficient resolution of this dispute.

In short, Section 25-5-11 of the Code of Alabama allows an employer to intervene in an action to be reimbursed for benefits or compensation it has paid out to an injured employee. *See Ex parte Cincinnati Ins. Co.*, 689 So. 2d 47 (Ala. 1997).  Based upon that authority, and pursuant to Rule 24 of the Federal Rules of Civil Procedure, Hwashin was clearly entitled to intervene in this matter.   The intervention was requested and granted in Hwashin's name as party plaintiff and a real party in interest and Hwashin had a clear right to assert its claims arising out of the collapse in conjunction with those asserted by the Fund.   Throughout this litigation, Hwashin has conducted itself as a party plaintiff in intervention and as a real party in interest for the claims it asserts against Gray, and Hwashin has been treated as such by the Court, the Clerk and even Gray, when it suited its purposes. The Court set a deadline for the parties to file Motions for Leave to Amend which Hwashin met.  Hwashin has demonstrated that its amendment is due to be allowed pursuant to Rule 15(a).

## CONCLUSION

Based upon the foregoing, Hwashin respectfully requests that the Court grant its Motion for Leave to Amend its Complaint in Intervention.

Respectfully submitted,

/s/ W. Christopher Waller, Jr.
Christopher Waller, Esq. (WAL187)
James A. Rives (RIV005)
Attorneys for Intervener
Hwashin America Corp.

**OF COUNSEL:**
BALL, BALL, MATTHEWS & NOVAK
P. O. Box 2148
Montgomery, AL 36102-2148
(334) 387-7680
(334) 387-3222 (fax)

/s/J. Lister Hubbard
**J. LISTER HUBBARD  (HUB007)**
**RICHARD H. ALLEN (ALL053)**
**ARDEN REED PATHAK (PAT072)**
Attorneys for Intervener
Hwashin America Corp.

OF COUNSEL:
**CAPELL & HOWARD, P.C.**
Post Office Box 2069
150 South Perry Street
Montgomery, Alabama  36102-2069
334/241-8000

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

Jere L. Beasley, Esquire
Julia Ann Beasley, Esquire
Beasley, Allen, Crow, Methvin,
  Portis & Miles, P.C.
Post Office Box 4160
Montgomery, AL  36103-4160

James A. Rives, Esquire
William Christopher Waller, Jr.
Ball, Ball, Matthews & Novak P.A.
Post Office Box 2148
Montgomery, AL  36102-2148

Thomas T. Gallion, III, Esquire
Constance C. Walker, Esquire
Felicia Abernathy Long, Esquire
Haskell, Slaughter,
  Young & Gallion, LLC
305 South Lawrence Street
Montgomery, AL   36104

Albry Joe Peddy, Esquire
Robert B. Stewart, Esquire
Smith, Spires & Peddy, P.C.
2015 Second Avenue North
Suite 200
Birmingham, AL  35203-3711

Brian Michael McClendon, Esquire
Elliot Britton Monroe, Esquire
Mickey B. Wright, Esquire
Lloyd, Gray & Whitehead, P.C.
2501 Twentieth Place South
Suite 300
Birmingham, AL  35223

Charles Keith Hamilton, Esquire
Bainbridge, Mims, Rogers & Smith
Post Office Box 530886
Birmingham, AL  35253

Linda C. Ambrose, Esquire
Rogers & Associates
3000 Riverchase Galleria
Suite 650
Birmingham, AL  35244

John S. Somerset, Esquire
Sudderth & Somerset
5385 First Avenue North
Birmingham, AL  35212

John S. DeShazo, Esquire
John M. Laney, Jr., Esquire
Post Office Box 43798
Birmingham, AL  35243-0798

Constance C. Walker, Esquire
Felicia Abernathy Long, Esquire
Thomas T. Gallion, III, Esquire
Haskell, Slaughter, Young & Gallion, LLC
305 South Lawrence Street
Montgomery, AL  36104

Larry W. Harper, Esquire
Porterfield, Harper, Mills & Motlow
Post Office Box 530790
Birmingham, AL  35253-0790

/s/J. Lister Hubbard
**J. LISTER HUBBARD  (HUB007)**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JENNIFER PIGGOTT and     )
SLADE PIGGOTT,           )
                            )
     Plaintiffs,         )
                            )     Case No.: CV-06-1158
v.                      )
                            )
GRAY CONSTRUCTION, INC.,     )
                            )
     Defendant.        )

## DEFENDANT GRAY CONSTRUCTION, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF IN INTERVENTION HWASHIN AMERICA CORPORATION

Pursuant to Federal Rules of Civil Procedure, Rule 34, Defendant Gray Construction, Inc. ("Gray") hereby propounds the following First Set of Requests for Production of Documents to Plaintiff in Intervention America Corporation ("Hwashin") to be answered in writing, under oath, within thirty (30) days of receipt of these Requests for Production of Documents.

### DEFINITIONS

A.    The term "YOU", "YOUR" or "HWASHIN" means Hwashin America Corporation and the attorneys, employees, officers, directors or agents and any and other PERSONS affiliated with Hwashin America Corporation who have information available to Hwashin America Corporation within the meaning of Rule 34.

B.    The term "PLAINTIFFS" means Plaintiffs Jennifer Piggott and Slade Piggott.

C.    The term "MRS. PIGGOTT" means Plaintiff Jennifer Piggott.

D.    The term "GRAY" means Defendant Gray Construction, Inc. and all its employees, officers, directors, attorneys, agents and any and all other PERSONS affiliated with Gray Construction, Inc.

E.    The term "THIRD PARTY" means any PERSON who is not a party to THIS CASE.

F.    The term "HWASHIN FACILITY" means the Hwashin America Corporation Facility where the ACCIDENT allegedly occurred.



EXHIBIT
A

G.     The term "PERSON" means any natural person, firm, corporation, partnership, sole proprietorship, estate, trust, trust estate, joint venture, association or any other form of business entity of any nature or character, together with the partners, trustees, officers, directors, employees, attorneys or agents thereof.

H.     The term "DOCUMENT" or "DOCUMENTS" as used herein is to be construed broadly and shall mean any kind of written, recorded or graphic matter, however produced or reproduced, of any kind of description, whether sent or received or neither, including originals, non-identical copies (whether different from the original because of marginal notes, or other material inserted therein or attached thereto, or otherwise), drafts and both sides thereof, including, but not limited to: agreements, communications, correspondence, telegrams, cables, telefax, electronic mail or telex messages, memoranda, records, books, summaries of records or personal conversations or interviews, desk calendars, appointment books, diaries, journals, forecasts, statistical statements, tabulations, accountants' work papers, graphs, charts, accounts, analytical records, affidavits, minutes, records or summaries of meetings or conferences, reports or summaries of interviews or telephone conversations, reports or summaries of investigations, opinions or reports of consultants, appraisals, records, reports or trade letters, press releases, contracts, notes, projections, drafts of any documents, working papers, checks (front and back), check stubs or receipts, sound recordings, data processing records, microfilm, photographs, maps, charts, accounts, financial statements or reports thereof, promissory notes, loan agreements, loan files and all notes contained with loan files, revolving credit agreements, deeds of trust, guaranty agreements or indemnification agreements, real estate contracts for sale or lease, pleading, or any other documents or writings of whatever description, including any information contained in any computer or stored separately in electronic media or removable media (even if not previously printed out) within the custody or control of YOU or any of YOUR employees, agents, including attorneys, accountants, investment bankers or advisors, or any other person acting or purporting to act on YOUR behalf.

I.     The term "COMMUNICATION" means any contact or act by which information or knowledge is transmitted or conveyed between two or more persons and includes, without limitation: written contacts (whether by letter, electronic mail, memoranda, written statements telegram, telefax, telex or any other document or method) and oral contacts (whether by face-to-face meeting, telephone conversations or otherwise).

J.     The term "IDENTIFY" with respect to a PERSON means the name, address and telephone number.

K.     The term "IDENTIFY" with respect to a DOCUMENT means the author of the DOCUMENT, the date the DOCUMENT was produced, the general subject matter of the DOCUMENT and the type of DOCUMENT (i.e. correspondence, contract, memoranda, etc.).

L.     The term "REFERRING TO" or "RELATING TO" any given subject, means any DOCUMENT, COMMUNICATION or statement that constitutes, contains, embodies, evidences, reflects, identifies, shows, states, analyzes, supports, refutes, refers to, deals with, arises from, is connected with, responds to, or is in any manner whatsoever pertinent to that subject.

413464v2                                2

M.    The term "COMPLAINT" means the Complaint in THIS CASE and any amendments thereto, if any.

N.    The term "COMPLAINT IN INTERVENTION" means HWASHIN'S Complaint in Intervention in THIS CASE.

O.    The term "THIS CASE" or "THIS LITIGATION" means Civil Action No. CV-06-1158.

P.    The term "ACCIDENT" means the accident identified in PLAINTIFF'S COMPLAINT.

Q.    The terms "and" and "or" shall be construed either disjunctively or conjunctively whenever appropriate in order to bring within the scope of these Interrogatories information or documents which might otherwise be considered to be beyond their scope.

R.    The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular whenever appropriate in order to bring within the scope of the Interrogatory any information which might otherwise be considered to be beyond their scope.

## REQUESTS FOR PRODUCTION

1.    Produce a complete copy of YOUR worker's compensation file for Mrs. Piggott including, but not limited to, any claim made for worker's compensation benefits, the First Report of Injury, any medical records or medical bills concerning the treatment of Mrs. Piggott, any reports regarding the ACCIDENT, any statements taken by any witness or any other DOCUMENTS which in any way REFERS TO or RELATES TO MRS. PIGGOTT'S worker's compensation claim made as a result of the ACCIDENT.

2.    Produce a copy of MRS. PIGGOTT'S complete personnel file.

3.    Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and PLAINTIFFS RELATING TO the HWASHIN FACILITY or the ACCIDENT.

4    Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and GRAY RELATING TO the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY or the ACCIDENT.

5.    Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and FREELAND HARRIS CONSULTING ENGINEERS RELATING TO the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY or the ACCIDENT.

6.    Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and ALLSOUTH SUBCONTRACTORS RELATING TO the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY or the ACCIDENT.

7.      Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and HARDY CORPORATION or RELATING TO the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY or the ACCIDENT.

8.      Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and QUINCY STEEL AND JOISTS COMPANY RELATING TO the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY or the ACCIDENT.

9.      Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and COOPER STEEL FABRICATORS RELATING TO the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY or the ACCIDENT.

10.     Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and MIDSOUTH ROOF SERVICES, INC. RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

11.     Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and QC MASONRY RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

12.     Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and LATTA PLUMBING COMPANY RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

13.     Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and ARD CONTRACTING, INC. RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

14.     Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and SSOE, INC. RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

15.     Produce each and every DOCUMENT RELATING TO any COMMUNICATION between YOU and any THIRD PARTY RELATING TO the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY or the ACCIDENT.

16.     Produce each and every DOCUMENT evidencing a written contract between HWASHIN and GRAY.

17.     Produce a copy of any and all subcontracts RELATING TO the construction of the HWASHIN FACILITY.

18.     Produce a copy of all Requests for Information or Change Orders that were produced during construction of the HWASHIN FACILITY.

19.     Produce a copy of each and every DOCUMENT which REFERS TO or

413464v2

RELATES TO any inspection, investigation or review of the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY .

20.   Produce each and every blueprint, diagram, schematic, photograph, records drawing or other DOCUMENT depicting the HWASHIN FACILITY.

21.   Produce a copy of any maintenance manuals or instructions RELATING to the roof, girders, joists, HVAC system, drainage system or office of the of the HWASHIN FACILITY or the drainage system.

22.   Produce a copy of any contract or agreement relating to the maintenance of the roof, girders, joists, HVAC system, drainage system or office of the HWASHIN FACILITY.

23.   Produce a copy of every incident report, complaint or other DOCUMENT relating to any problems with the roof of the HWASHIN FACILITY or the HWASHIN FACILITY drainage system.

24.   Produce a copy of any photograph, video recording, drawing or other depiction of MRS. PIGGOTT prior to or after the ACCIDENT.

25.   Produce each and every ACCIDENT report, summary or other DOCUMENTS REFERRING TO or RELATING TO the ACCIDENT.

26.   Produce each and every bill, invoice or other DOCUMENT related to any damage YOU have incurred as a result of the ACCIDENT.

27.   Produce each and every DOCUMENT REFERRED TO, relied upon or referenced in YOUR responses to GRAY'S Interrogatories.

Dated: April 23 , 2007.

Respectfully submitted,

BY:

E. Britton Monroe
Mickey B. Wright
Brian M. McClendon
Attorneys for Defendant
Gray Construction, Inc.

**OF COUNSEL:**
**LLOYD, GRAY & WHITEHEAD, P.C.**
2501 20th Place South
Suite 300
Birmingham, Alabama 35223
Telephone: (205) 967-8822
Telecopier: (205) 967-2380

413464v2

5

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing document to all attorneys of record by U.S. Mail, postage prepaid upon the following parties the _73_ day of April, 2007.

Jere L. Beasley, Esq.
Julia Ann Beasley, Esq.
Beasley, Allen, Crow, Methvin, Portis & Miles
P.O. Box 4160
Montgomery, AL 36103-4160

James A. Rives, Esq.
Ball, Ball, Matthews & Novak
P.O. Box 2148
Montgomery, AL 36102-2148

OF COUNSEL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JENNIFER PIGGOTT and SLADE PIGGOTT, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: CV-06-1158 |
| v. | ) ) | |
| GRAY CONSTRUCTION, INC., | ) ) | |
| Defendant. | ) | |

## DEFENDANT GRAY CONSTRUCTION, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF IN INTERVENTION HWASHIN AMERICA CORPORATION

Pursuant to Federal Rules of Civil Procedure, Rule 33, Defendant Gray Construction, Inc. ("Gray") hereby propounds the following First Set of Interrogatories to Plaintiff in Intervention Hwashin America Corporation ("Hwashin") to be answered in writing, under oath, within thirty (30) days of receipt of these Interrogatories.

## DEFINITIONS

A.     The term "YOU", "YOUR" or "HWASHIN" means Hwashin America Corporation and the attorneys, employees, officers, directors or agents and any and other PERSONS affiliated with Hwashin America Corporation who have information available to Hwashin America Corporation within the meaning of Rule 34.

B.     The term "PLAINTIFFS" means Plaintiffs Jennifer Piggott and Slade Piggott.

C.     The term "MRS. PIGGOTT" means Plaintiff Jennifer Piggott.

D.     The term "GRAY" means Defendant Gray Construction, Inc. and all its employees, officers, directors, attorneys, agents and any and all other PERSONS affiliated with Gray Construction, Inc.

E.     The term "THIRD PARTY" means any PERSON who is not a party to THIS CASE.

F.     The term "HWASHIN FACILITY" means the Hwashin America Corporation Facility where the ACCIDENT allegedly occurred.

EXHIBIT
B

G.    The term "PERSON" means any natural person, firm, corporation, partnership, sole proprietorship, estate, trust, trust estate, joint venture, association or any other form of business entity of any nature or character, together with the partners, trustees, officers, directors, employees, attorneys or agents thereof.

H.    The term "DOCUMENT" or "DOCUMENTS" as used herein is to be construed broadly and shall mean any kind of written, recorded or graphic matter, however produced or reproduced, of any kind of description, whether sent or received or neither, including originals, non-identical copies (whether different from the original because of marginal notes, or other material inserted therein or attached thereto, or otherwise), drafts and both sides thereof, including, but not limited to: agreements, communications, correspondence, telegrams, cables, telefax, electronic mail or telex messages, memoranda, records, books, summaries of records or personal conversations or interviews, desk calendars, appointment books, diaries, journals, forecasts, statistical statements, tabulations, accountants' work papers, graphs, charts, accounts, analytical records, affidavits, minutes, records or summaries of meetings or conferences, reports or summaries of interviews or telephone conversations, reports or summaries of investigations, opinions or reports of consultants, appraisals, records, reports or trade letters, press releases, contracts, notes, projections, drafts of any documents, working papers, checks (front and back), check stubs or receipts, sound recordings, data processing records, microfilm, photographs, maps, charts, accounts, financial statements or reports thereof, promissory notes, loan agreements, loan files and all notes contained with loan files, revolving credit agreements, deeds of trust, guaranty agreements or indemnification agreements, real estate contracts for sale or lease, pleading, or any other documents or writings of whatever description, including any information contained in any computer or stored separately in electronic media or removable media (even if not previously printed out) within the custody or control of you or any of your employees, agents, including attorneys, accountants, investment bankers or advisors, or any other person acting or purporting to act on your behalf.

I.    The term "COMMUNICATION" means any contact or act by which information or knowledge is transmitted or conveyed between two or more persons and includes, without limitation: written contacts (whether by letter, electronic mail, memoranda, written statements telegram, telefax, telex or any other document or method) and oral contacts (whether by face-to-face meeting, telephone conversations or otherwise).

J.    The term "IDENTIFY" with respect to a PERSON means the name, address and telephone number.

K.    The term "IDENTIFY" with respect to a DOCUMENT means the author of the DOCUMENT, the date the DOCUMENT was produced, the general subject matter of the DOCUMENT and the type of DOCUMENT (i.e. correspondence, contract, memoranda, etc.).

L.    The terms "REFER TO", "RELATE TO", "REFERRING TO" or "RELATING TO" any given subject, means any document, communication or statement that constitutes, contains, embodies, evidences, reflects, identifies, shows, states, analyzes, supports, refutes, refers to, deals with, arises from, is connected with, responds to, or is in any manner whatsoever pertinent to that subject.

2

M.    The term "COMPLAINT" means the Complaint in THIS CASE and any amendments thereto, if any.

N.    The term "COMPLAINT IN INTERVENTION" means HWASHIN'S COMPLAINT IN INTERVENTION in THIS CASE.

O.    The term "THIS CASE" or "THIS LITIGATION" means Civil Action No. CV-06-1158.

P.    The term "ACCIDENT" means the accident identified in PLAINTIFF'S COMPLAINT.

Q.    The terms "and" and "or" shall be construed either disjunctively or conjunctively whenever appropriate in order to bring within the scope of these Interrogatories information or documents which might otherwise be considered to be beyond their scope.

R.    The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular whenever appropriate in order to bring within the scope of the Interrogatory any information which might otherwise be considered to be beyond their scope.

## INTERROGATORIES

1.    IDENTIFY each and every PERSON who assisted in answering these Interrogatories and/or responding to GRAY'S Requests for Production of Documents.

2.    IDENTIFY the PERSON in possession of any documents produced in response to Gray's First Set of Requests for Production of Documents and describe in detail the location of the documents.

3.    IDENTIFY the general contractor responsible for the construction of the HWASHIN FACILITY.

4.    IDENTIFY the architect responsible for the design of the HWASHIN FACILITY.

5.    IDENTIFY each and every subcontractor who performed any work related to the engineering, design or construction of the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY.

6.    IDENTIFY each and every plan, specification, blueprint, chart, design and report prepared by any PERSON which REFERS TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY.

7.    IDENTIFY each and every maintenance manual or directions for the care and upkeep of the roof, girders, joists, HVAC system or drainage system of the HWASHIN facility.

8.    IDENTIFY each and every PERSON who has inspected, reviewed or tested the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY.

3

9.    IDENTIFY each and every PERSON who has maintained or repaired the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY.

10.    Describe in detail all maintenance performed on the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY by HWASHIN or on YOUR behalf, including but not limited to the date of the maintenance.

11.    Describe in detail every time HWASHIN or anyone acting on its behalf cleaned the roof or roof drains of the HWASHIN FACILITY.

12.    Describe in detail each and every COMMUNICATION between HWASHIN and PLAINTIFFS RELATING TO the HWASHIN FACILITY or the ACCIDENT.

13.    Describe in detail each and every COMMUNICATION between HWASHIN and GRAY RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

14.    Describe in detail each and every COMMUNICATION between HWASHIN and FREELAND HARRIS CONSULTING ENGINEERS RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

15.    Describe in detail each and every COMMUNICATION between HWASHIN and ALLSOUTH SUBCONTRACTORS, INC. RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

16.    Describe in detail each and every COMMUNICATION between HWASHIN and HARDY CORPORATION RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

17.    Describe in detail each and every COMMUNICATION between HWASHIN and QUINCY STEEL AND JOISTS COMPANY RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

18.    Describe in detail each and every COMMUNICATION between HWASHIN and COOPER STEEL FABICATORS RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

19.    Describe in detail each and every COMMUNICATION between HWASHIN and MIDSOUTH ROOF SERVICES, INC. RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

20.    Describe in detail each and every COMMUNICATION between HWASHIN and QC MASONRY RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

21.    Describe in detail each and every COMMUNICATION between HWASHIN and LATTA PLUMBING COMPANY RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

4

22.    Describe in detail each and every COMMUNICATION between HWASHIN and ARD CONTRACTING, INC. RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

23.    Describe in detail each and every COMMUNICATION between HWASHIN and SSOE, INC. RELATING TO the roof, girders, joists, HVAC system or drainage system of the HWASHIN FACILITY or the ACCIDENT.

24.    Describe in detail any payments made to MR. PIGGOTT or MRS. PIGGOTT or on their behalf as a result of the ACCIDENT, including, but not limited to, the amount of any payments made as a result of MRS. PIGGOTT'S worker's compensation claim.

25.    Provide a detailed calculation of any bills or expenses incurred by YOU as a result of MRS. PIGGOTT'S ACCIDENT, stating with specificity and particularity (a) the name of the entity providing the bill, (b) the dates of the bill, (c) the dollar amounts of the bill, and (d) the nature of the damage upon which the bill is based.

26.    Provide a privilege log for any and all documents withheld on the basis of attorney client privilege, the attorney work product doctrine or any other theory of privilege or non-disclosure.

Dated: April _____ 23, 2007.

Respectfully submitted,

BY: _____

E. Britton Monroe
Mickey B. Wright
Brian M. McClendon
Attorneys for Defendants
Gray Construction, Inc.

**OF COUNSEL:**
**LLOYD, GRAY & WHITEHEAD, P.C.**
2501 20th Place South
Suite 300
Birmingham, Alabama 35223
Telephone: (205) 967-8822
Telecopier: (205) 967-2380

5