IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER PIGGOTT and | * | |
| SLADE PIGGOTT, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Case No. CV-06-1158-F |
| | * | |
| GRAY CONSTRUCTION, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| HWASHIN AMERICA CORP., | * | |
| | * | |
| Intervener Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| JAMES N. GRAY COMPANY, a/k/a | * | |
| GRAY CONSTRUCTION, INC., | * | |
| GNF ARCHITECTS AND | * | |
| ENGINEERS, PSC, HARDY | * | |
| MECHANICAL CO., INC., FREELAND | * | |
| HARRIS CONSULTING ENGINEERS OF | * | |
| GEORGIA, INC., FREELAND HARRIS | * | |
| CONSULTING ENGINEERS OF | * | |
| KENTUCKY, INC.,  ALL-SOUTH | * | |
| SUBCONTRACTORS,  INC.,  MID | * | |
| SOUTH ROOF SYSTEMS, INC., | * | |
| COOPER'S  STEEL FABRICATORS, | * | |
| INC.,  LATTA PLUMBING & | * | |
| CONSTRUCTION CO., INC., and | * | |
| FIRESTONE BUILDING PRODUCTS | * | |
| COMPANY, LLC | * | |
| | * | |
| Defendants. | * | |

HWASHIN AMERICA CORPORATION'S REPLY
TO GRAY CONSTRUCTION INC.'S RESPONSE TO
HWASHIN'S MOTION TO DISMISS

Comes Now Plaintiff in Intervention and Third Party Defendant, Hwashin America Corporation ("Hwashin"), and hereby submits this Reply to Gray Construction, Inc.'s ("Gray") Response in Opposition to Hwashin's Motion to Dismiss (Doc.107).

## ARGUMENT

### I. THE CONTRACT CLAUSE UNDER WHICH GRAY CLAIMS CONTRACTUAL INDEMNITY IS UNAMBIGUOUS AND WHOLLY IRRELEVANT TO THE SUBJECT MATTER OF THIS ACTION.

#### A. The Term "Condition" As Used in the Indemnity Provision Clearly Does Not Extend to the Circumstances Alleged by Gray

Gray has acknowledged that in order for there to be indemnity under 11.10.4.3 the alleged damages must have arisen from a "substance, condition, element, or material" produced, emitted or released by Hwashin. Gray relies exclusively upon the word "condition" as the basis for its claim that the indemnification provision is applicable. (Doc. 107, pp. 5) The word "condition" is not specifically defined in the Contract. In interpreting the meaning of "condition", Gray refers the Court to a generic definition in Black's Law Dictionary, and to definitions adopted by a New York and New Jersey court in premises liability cases.[1] The Court need not resort to Black's Law Dictionary or the case law from distant jurisdictions in order to determine the parties' intent when using the word "condition" in 11.10.4.3. Indeed, the Court need travel no further than the subsections immediately surrounding this provision to determine its meaning.

---

[1] It is doubtful that when drafting and executing the Contract the parties intended to incorporate the definition of "dangerous condition" as set forth in these unrelated cases from distant jurisdictions. Rather, it seems only logical that the meaning the parties most likely intended to give to the word "condition" in section 11.10.4.3 would be consistent with its meaning in the subsections immediately surrounding that provision.

Paragraphs 11.10.4.1, 11.10.4.2, 11.10.4.3 and 11.10.4.4 are all subsections of, and must be read in context of, section 11.10.4, titled "**Pollutants from Owner's Operations**." The only reasonable way to interpret the subsections of 11.10.4 is to read those sections in the context of "pollutants from Owner's operations". Indeed, 11.10.4.1 establishes the procedures to be followed after Hazardous Substances are encountered. Subsection 11.10.4.2 equates the word "condition" with "asbestos, PCB, or other Hazardous Substance." Subsection 11.10.4.4 provides a definition of Hazardous Substances. Plainly, Gray's attempt to disassociate the meaning of "condition" in subsection 11.10.4.3 from 11.10.4 ("**Pollutants from Owner's Operations**") and the rest of its subsections is directly contrary to Alabama law. *RLI Ins. Co. v. MLK Ave. Redevelopment Corp.*, 925 So. 2d 914, 919 (Ala. 2005) ("A court must construe a contract in its entirety, and *single provisions of sentences are not to be dissociated from others having reference to the same subject matter*.") (Citation omitted).[2]

Gray errs when it claims that Hwashin has argued "that Section 11.10.1 and the indemnification provision, apply only to conditions existing at the time of contract." (Doc. 107, p. 6). Hwashin has not argued that the indemnification provision in 11.10.4.3 only applies to conditions that existed at the time of contracting. Rather, Hwashin has merely argued that the term "site condition", as referenced in the title of Section 11.10 (and as described in subsection 11.10.1 and the last sentence of section 11.10.2) is limited to conditions that existed at the time of contracting, or where encountered during construction, and such "site conditions" are treated differently than "pollutants" and other environmental conditions described elsewhere in section 11.10. Indeed, Subsection

---

[2]    In addition, section 11.10.3 uses the phrase "conditions, substances, or materials" in relation to environmental audits.

11.10.1, when referring to these site conditions, states that Gray "shall not have any liability or responsibility of any kind...for, any..."claims"...in connection with the ***condition* (including but not limited to, any earth work, fill work, compaction, settlement, soil density, plasticity or slippage)** of the ***site*** on which the Project is ***to be constructed***..." (Emphasis added) Further, Subsection 11.10.2 then states that Gray, upon encounter of any concealed or unknown site condition, is entitled to relief as provided in Subsection 8.5.1. Subsection 8.5.1., titled "**Concealed Conditions**", states as follows.

> If conditions are encountered at the site which are (1) subsurface or otherwise concealed **physical conditions** which differ materially from those indicated in the Contract Documents, or (2) unknown physical conditions of an unusually nature which **differ materially from those ordinarily found to exist** and **generally recognized as inherent in construction activities** of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly **before conditions are disturbed** and in no event later than 21 days after first observance of the conditions. The Contract Sum shall be equitably adjusted for such concealed or unknown conditions by Change Order upon claim by either party made within 21 days after the claimant becomes aware of the conditions.

Thus, the phrase "site conditions" as used and referred to in 11.10 only includes those conditions that existed at the time of contracting or were encountered during construction. Since Gray has acknowledged that the alleged clogging of the drains by the HVAC filters occurred after the completion of construction (Doc. 107, p. 11), that could not be considered a "site condition", as that term is used in section 11.10. Thus, even if non-pollutant "site conditions" triggered the indemnity clause in 11.10.4.3 (which Hwashin disputes), the alleged clogged drains are not "site conditions".

**B.     HVAC Filters Are Not "Pollutants" as Used in Subsection 11.10.4**

In its opposition, Gray for the first time alleges that the "debris" it referenced in its Third Party Complaint as clogging the drains is actually HVAC filters Hwashin supposedly "dumped" on the roof.  Gray then argues that HVAC filters are "pollutants" and therefore the indemnity provision in 11.10.4.3 is triggered.  This unsupported HVAC filter allegation, which is not contained in Gray's Third Party Complaint, should not be considered on this motion to dismiss.

Even if the Court were to address this argument, Gray provides no authority directly holding that HVAC filters could be considered "pollutants" under 11.10.4. Subsection 11.10.4 of the Contract defines "pollutant" as "any solid, liquid, gaseous, or thermal *irritant or contaminant*, including but not limited to smoke, vapor, soot, fumes, acids, alkaline, chemicals and **wastes** and shall include any Hazardous Substance."  Gray first argues that HVAC filters are "contaminants".  Gray quotes a Connecticut case that considered whether the existence of lead paint in a building fell within an insurance policy's pollution exclusion for a definition of "contaminant"  (Doc. 107, p. 7) (quoting *Yale v. Cigna Ins. Co.*, 224 F. Supp. 2d 402, 422 (D. Conn. 2002).  While it is not difficult to understand how lead paint could be considered a contaminant that renders property "unfit", it is quite difficult to accept the premise that HVAC filters, in and of themselves, are contaminants that render property unfit.  Indeed, addressing a similar issue, the Seventh Circuit has stated:

> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for "there is virtually no substance or chemical in existence that would not irritate or damage some person or property."  Westchester Fire Ins. Co. v. City of Pittsburg, 768 F. Supp. 1463, 1470 (D. Kan. 1991).  Without some limiting

> principle, the pollution exclusion clause would extend far beyond
> its intended scope, and lead to some absurd results.  To take but
> two simple examples, reading the clause broadly would bar
> coverage for bodily injuries suffered by one who slips and falls on
> the spilled contents of a bottle of Drano, and for bodily injury
> caused by an allergic reaction to chlorine in a public pool.
> Although Drano and chlorine are both irritants or contaminants
> that cause, under certain conditions, bodily injury or property
> damage, one would not ordinarily characterize these events as
> pollution.

*Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043

(7th Cir. 1993) (quoting *Heyman Assocs. No. 1 v. Insurance Co. of the State of Pa.*, 653

A.2d 122 (Conn. 1995)).  Likewise, one would not characterize the event of a building

allegedly collapsing due to debris, waste, HVAC filters, etc., which clogged roof drains

as "pollution."

Gray also claims that HVAC filters are "waste", and because the word "waste" is

included in the definition of "pollutant" in Subsection 11.10.4, HVAC filters are

"pollutants".  (Doc. 107, pp. 7-8).  Gray patches together definitions of various words,

from differing sources, to reach this conclusion.  Working Gray's definitions backwards,

Gray concludes that HVAC filters are "refuse", "refuse" is "Solid Waste",[3] "Solid

Waste" is "waste", "waste" is "pollutant"; thus, HVAC filters are "pollutant".  (Doc. 107,

---

[3]     Gray claims that HVAC filters fall into the Resource Conservation and Recovery Act of
1976 (RCRA) definition of "solid waste." (Doc. 107, p.7).  RCRA establishes a regulatory
program to manage and control solid ***hazardous*** waste from generation to final disposal.  Thus,
for "solid waste" to be regulated by RCRA (*i.e.*, considered a "pollutant" under RCRA), it must
also be hazardous.  The RCRA definition of hazardous waste, 42 U.S.C.A. § 6903(5) is:

> solid waste, or combination of solid waste, which because of its quantity,
> concentration, or physical, chemical, or infectious characteristics may
> cause, or significantly contribute to, an increase in mortality or an
> increase in serious irreversible, or incapacitating reversible, illness, or
> which may pose a substantial present or potential hazard to human health
> or the environment when improperly treated, transported, or disposed of,
> or otherwise managed.

pp. 7-8) Noticeably absent from Gray's argument are any statutes, regulations or cases which specifically treat HVAC filters as "pollutants", or hazardous substances of any kind.

> **C.     Even When Read Standing Alone, Section 11.10.4.3 Clearly and Unambiguously Does Not Apply to the Circumstances Alleged by Gray**

Even assuming that Gray could establish that the term "condition" in Subsection 11.10.4.3 encompasses "debris" clogging a roof drain, Gray has overlooked the rest of the indemnity provision.  The provision goes on to qualify the "conditions" indemnified into two distinct categories, only one of which is relevant to the present case: conditions "...(a) produced by Owner or emitted or released by Owner either intentionally or unintentionally, *from* the facilities..." Consistent with the clear and unambiguous intent of the provision, this qualification limits the scope of the indemnification provisions to those environmental conditions which escape the facility and cause bodily injury to third parties.   "Debris" which is on the roof of the facility clearly does not fall into this category.   In fact, Gray alleges the exact opposite in its Third Party Complaint: that debris ***contained on the facility*** was **not** ***emitted or released from the facility*** which allegedly caused the collapse.  (Doc. 26, ¶¶ 35, 59).   Thus, even when reviewed in a vacuum, Gray has failed to allege facts that would allow it to recover under the indemnity provision.

> **D.     No Ambiguity Exists in Subsection 11.10.4**

Alternatively, Gray argues that simply based upon the fact that Hwashin offers a differing construction of the contract terms at issue, a patent ambiguity must be found by the court to exist and the motion to dismiss must be denied.  (Doc. 107, pp. 8-9).  Gray

makes the conclusory statement that the "surrounding language cited by Hwashin creates an ambiguity and a jury question as to the scope of Section 11.10.4.3." (Id.). However, Alabama law states otherwise. *Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 796 (11th Cir. 1996) (under Alabama law, the determination of whether a written contract is ambiguous is a question of law for the court, which is subject to *de novo* review) (citing *Vulcan Painters, Inc. v. MCI Constructors, Inc.*, 41 F.3d 1457, 1460 (11th Cir. 1995). "The mere fact that adverse parties contend for different constructions does not of itself force the conclusion that the disputed language is ambiguous." *Englund's Flying Serv., Inc. v. Mobile Airport Auth.*, 536 So. 2d at 1373 (citing *Antram v. Stuyvesant Insurance Co.*, 291 Ala. 716, 720, 287 So. 2d 837 (1973)).

As Hwashin has established, upon a "plain meaning" review of the Contract in its entirety, it is clear that the indemnity obligations in Paragraph 11.10.4.3 unambiguously apply only to bodily harm or property damage arising out of pollutants from Hwashin's operations—*which is not at issue in this case*. Under no reading of Gray's third party claim for contractual indemnity can Gray recover pursuant to the unambiguous indemnity provision relied upon by Gray. Therefore, the claim is due to be dismissed under Rule 12(b)(6) for failure to state a claim.

II.    **GRAY'S COMMON LAW INDEMNITY CLAIM SHOULD BE DISMISSED FOR EITHER OF TWO REASONS: ALA. CODE § 25-5-53 EXCLUSIVITY, OR THE RULE OF NO CONTRIBUTION AMONG JOINT TORTFEASORS.**

A.    **Hwashin is Immune From Liability For Mrs. Piggott's Injuries Outside of the Payment of Worker's Compensation Benefits**

Gray apparently agrees that, under Ala. Code § 25-5-53, it is not allowed to recover directly from Hwashin absent an applicable, express contractual indemnification

provision, since its sole argument on this issue is the dual capacity doctrine. A common law indemnity claim, by its very nature, is a claim maintained in the absence of an express indemnity agreement, so the inquiry should stop there. However, Gray argues that, because Hwashin "chose" to form "a maintenance team to clean the Hwashin office facility roof drains", it "effectively assumed dual roles as both Mrs. Piggott's employer and the entity responsible for maintaining the building." (Doc. 107, pp. 10-11). First, there is no allegation in the Third Party Complaint regarding Hwashin forming a maintenance team. (Doc. 26, ¶¶ 32-36, 57-61). Additionally, Gray fails to allege anything about Hwashin undertaking a "dual role" with respect to Mrs. Piggott. (Doc. 26, ¶ 30). Thus, these facts, and the accompanying argument, are not before the court on this 12(b)(6) motion and should be stricken; nevertheless, they still do not help Gray's position.

As far as Gray is concerned, it is immaterial whether there is an exception available to *an employee* to overcome exclusivity and thus recover damages outside of the worker's compensation statutes. Mrs. Piggott was compensated for her injuries by Hwashin, through its workers compensation carrier, pursuant to the worker's compensation schedule. Furthermore, on June 25, 2007, Mrs. Piggott settled her worker's compensation claims against Hwashin, which were pending in Butler County Circuit Court, *Piggott v. Hwashin*, Civil Action No. cv-2007-50. (A true and correct copy of the Workmen's Compensation Settlement Agreement that Mrs. Piggott and Hwashin entered into is attached hereto as Exhibit A.) That issue was necessarily part of the worker's compensation settlement between Hwashin and the Piggotts. In fact, it is explicitly stated by the parties that they "have stipulated that they are subject to the

provisions of the Workmen's Compensation laws of the State of Alabama." (Ex. A, ¶ 4).
Clearly no third party has standing to argue that Mrs. Piggott's injuries are the result of
Hwashin acting in a dual capacity when the employee herself can no longer advance such
a position.

Moreover, the dual capacity doctrine has yet to be applied in the State of Alabama
against an employer under any set of alleged facts. Every one of the cases cited by Gray
refused to hold that the doctrine applies. See *Ritchie v. Bridgestone/Firestone, Inc.*, 621
So. 2d 288 (Ala. 1993) (employer manufactured for sale to the public a tire rim that
exploded and injured its employee); *Therrell v. Scott paper Co., Inc.*, 428 So. 2d 33 (Ala.
1983) (employer's company doctor rendered allegedly negligent medical treatment that
injured its employee); *Windham v. Blount International, Ltd.*, 423 So. 2d 194 (Ala. 1982)
(employee was injured in his regular line of work due to a fall caused by a defective
safety hook allegedly manufactured by employer); *Missildine v. Avondale Mills, Inc.*, 415
So. 2d 1040 (Ala. 1981) (employee's injury resulted from employer's alleged negligence
in causing employee to acquire a respiratory disease); *Mapson v. Montgomery White
Trucks, Inc.*, 357 So. 2d 971 (Ala. 1978) (employee mechanic was injured while
performing warranty repairs on a truck sold by his employer as a "seller of goods to the
public").

Most importantly, the Alabama Supreme Court has squarely addressed the
"employer-property owner" scenario which Gray now argues will trigger the dual
capacity doctrine; it held that the theory is without merit because "dual capacity will not
be found merely because the employer has a number of departments or divisions that
perhaps are quite separate in their functions and operations." *Stone v. U.S. Steel Corp.*,

384 So. 2d 17, 18 (Ala. 1980) (quoting A. Larson, 2A THE LAW OF WORKMEN'S COMPENSATION, s 72.80, p. 14-115 (1976)). Additionally, quoting ALA. CODE § 26-6-1(a)(1), the Alabama Supreme Court has held that providing safe "ways, works, machinery or plant connected with or used in the business" of the employer is an obligation flowing to its employees *in its role as employer*. *Ritchie v. Bridgestone/Firestone, Inc.*, 621 So. 2d 288, 290 (Ala. 1993) (quoting *Bowen v. Goodyear Tire & Rubber Co.*, 516 So. 2d 570 (Ala. 1987)).

Furthermore, contrary to Gray's argument, it is of no consequence that, had Hwashin hired an independent contractor to perform maintenance duties, the contractor could be liable to the injured employee. (Doc. 107, 10-11). For example, the Alabama Supreme Court has held that an employer which maintained and staffed a medical facility on its premises for the purpose of treating employees could not be held liable under the doctrine for the additional injuries caused by the malpractice of a doctor-employee. *Therrell v. Scott Paper Co.*, 428 So. 2d 33. Thus, Gray cannot overcome Hwashin's immunity under ALA. CODE § 25-5-53 by alleging that the dual capacity doctrine applies to this case. As such, Gray's common law indemnity claim should be dismissed.

### (ii)    Gray's Claims for Common Law Indemnity is Simply a Claim for Contribution Which is Barred in Alabama

Gray's common law indemnity claim is essentially based on its claims that because Gray built Hwashin's building, completed the job, relinquished all control of the building to Hwashin and left the job site, it cannot be held accountable for the sole actions of Hwashin in failing to clean the roof drains which caused the collapse of the roof. (Doc. 107, pp. 11-12). This claim, if proven, provides Gray a complete defense to

the Piggott's claims for bodily injury. However, Gray is asserting this position as a basis *for recovery against Hwashin through common law indemnity*. As Gray correctly argues, common law indemnity claims have been allowed in Alabama under two exceptions to the bar against contribution between joint tortfeasors: (1) the original defendant is without fault, except technically or constructively, or (2) where both parties are at fault, but the fault of the party from whom indemnity is claimed was the efficient cause of the injury. *See, e.g. Coates v. CTB, Inc.*, 173 F. Supp. 1200, 1203 (M.D. Ala. 2001). However, the *Coates* court also held that the third party indemnitor must have owed some kind of duty to the original defendant indemnitee in order for the exception to apply. *Id.* ("Where an injury results from a violation of a duty which one owes to another, the parties are not in pari delicto."). Otherwise, the claim is simply one for joint contribution. Hwashin owed no duty to Gray to keep its drains clean after construction had been completed and Gray had left the site. Thus, there is no possible way Gray can maintain a common law indemnity claim against Hwashin.

Despite the lack of a duty owed by Hwashin, Gray apparently is relying on the second part of the exception in order to support its indemnity claim, *i.e.*, that Hwashin allowed debris to collect upon the roof and Hwashin's actions were the efficient cause of the collapse.[4] (Doc. 107, pp. 11-12, 14). However, absent the allegation that Hwashin owed some kind of a continuing duty to Gray to properly clean the roof drains after Gray completed the job, relinquished all control of the building to Hwashin and left the job

---

[4] Gray's argument that Hwashin was the sole cause of the collapse, by its very nature, separates Gray from being able to allege that it is entitled to common law indemnity from Hwashin. Common law indemnity rests on there having been some relationship between joint tortfeasors and that as between Gray's and Hwashin's alleged negligence, Hwashin actions were the efficient cause of the injury. (Doc. 107, p. 11).

site, Gray has only plead an affirmative defense to the Piggotts' claims, *i.e.*, that Hwashin's negligence caused the collapse.

Gray takes issue with Hwashsin's citation to a case out of Michigan for the proposition that party may not seek indemnity from a joint tortfeasor when the primary complaint alleges active, rather than passive, liability. *See, e.g., Lakeside Oakland Development, L.C. v. H&J Beef Co.*, 644 N.W.2d 765 (Mich. 2002). However, just like Gray has failed to allege that Hwashin owed any duty to Gray to clean or maintain Hwashin's own property, the original defendant indemnitee in *Lakeside* failed to allege that the third party defendant indemnitor owed any sort of duty to it. The *Lakeside* court stated "with regard to this particular claim, it appears that [the original defendant] is arguing a right to common-law indemnification without any reliance on a particular duty owed by the [third party defendant] to the original defendant." *Id.* at 722. Thus, even if under Alabama law, it would be improper to dismiss a complaint in which the primary complaint alleges active, rather than passive, liability, all of the Alabama cases[5] cited by Gray ultimately required for some duty to have been owed to the party seeking indemnification by the indemnitor.

Gray has not, and cannot allege such a duty to it on behalf of Hwashin existed. Thus, it is clear that Gray's claim against Hwashin should be dismissed for failure to state a claim against Hwashin for which relief can be granted.

---

[5]    Gray cites *Crockett v. Uniroyal, Inc.*, 722 F.2d 1524 (11th Cir. 1985) as a holding decided according to Alabama law, but that case was actually decided under Georgia law.

**WHEREFORE,** based upon the foregoing, Hwashin respectfully requests that the Court grant its Motion to Dismiss Gray's Third Party Claims in its entirety.

Respectfully submitted,

/s/J. Lister Hubbard
**J. LISTER HUBBARD (HUB007)**
**RICHARD H. ALLEN (ALL053)**
**ARDEN REED PATHAK (PAT072)**
Attorneys for Intervener
Hwashin America Corp.

OF COUNSEL:
**CAPELL & HOWARD, P.C.**
Post Office Box 2069
150 South Perry Street
Montgomery, Alabama  36102-2069
334/241-8000

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

| | |
|---|---|
| Jere L. Beasley, Esquire<br>Julia Ann Beasley, Esquire<br>Beasley, Allen, Crow, Methvin,<br>   Portis & Miles, P.C.<br>Post Office Box 4160<br>Montgomery, AL  36103-4160 | James A. Rives, Esquire<br>William Christopher Waller, Jr.<br>Ball, Ball, Matthews & Novak P.A.<br>Post Office Box 2148<br>Montgomery, AL  36102-2148 |
| Thomas T. Gallion, III, Esquire<br>Constance C. Walker, Esquire<br>Felicia Abernathy Long, Esquire<br>Haskell, Slaughter,<br>   Young & Gallion, LLC<br>305 South Lawrence Street<br>Montgomery, AL  36104 | Albry Joe Peddy, Esquire<br>Robert B. Stewart, Esquire<br>Smith, Spires & Peddy, P.C.<br>2015 Second Avenue North<br>Suite 200<br>Birmingham, AL  35203-3711 |
| Brian Michael McClendon, Esquire<br>Elliot Britton Monroe, Esquire<br>Mickey B. Wright, Esquire<br>Lloyd, Gray & Whitehead, P.C.<br>2501 Twentieth Place South<br>Suite 300<br>Birmingham, AL  35223 | Charles Keith Hamilton, Esquire<br>Bainbridge, Mims, Rogers & Smith<br>Post Office Box 530886<br>Birmingham, AL  35253 |
| Linda C. Ambrose, Esquire<br>Rogers & Associates<br>3000 Riverchase Galleria<br>Suite 650<br>Birmingham, AL  35244 | John S. Somerset, Esquire<br>Sudderth & Somerset<br>5385 First Avenue North<br>Birmingham, AL  35212 |

| | |
|---|---|
| John S. DeShazo, Esquire<br>John M. Laney, Jr., Esquire<br>Post Office Box 43798<br>Birmingham, AL 35243-0798 | Larry W. Harper, Esquire<br>Porterfield, Harper, Mills & Motlow<br>Post Office Box 530790<br>Birmingham, AL 35253-0790 |
| Hope T. Cannon, Esquire<br>Brittin Turner Coleman, Esquire<br>Kenneth Martin Perry, Esquire<br>Bradley, Arant, Rose & White, LLP<br>1819 Fifth Avenue North<br>Birmingham, Alabama 35203 | Andrew W. Christman, Esquire<br>Steven Keith Herndon, Esquire<br>Gidiere, Hinton, Herndon & Christman<br>904 Regions Tower<br>60 Commerce Street<br>Montgomery, Alabama 36104 |

/s/J. Lister Hubbard
**J. LISTER HUBBARD (HUB007)**

**IN THE CIRCUIT COURT OF BUTLER COUNTY**
**STATE OF ALABAMA**

JENNIFER PIGGOTT,        )
                           )
     Plaintiff,        )
                           )
v.                       )     CIVIL ACTION NO. CV-2007-50
                           )
HWASHIN AMERICA CORPORATION,  )
                           )
     Defendant.       )

FILED IN OFFICE
ALLEN STEPHENSON
JUN 2 5 2007
CIRCUIT CLERK
BUTLER COUNTY

## WORKMEN'S COMPENSATION SETTLEMENT AGREEMENT

The parties hereto being the only parties interested in the above-styled matter, hereby petition this Honorable Court for approval of the following agreement and compromise settlement and agree and represent unto the Court as follows:

1.     Plaintiff Jennifer Piggott is of legal age and is a resident and citizen of Alabama.

2.     Defendant Hwashin America Corporation was doing business under the laws of the State of Alabama on or about October 17, 2006.

3.     The parties agree that venue is proper in Butler County.

4.     On or about October 17, 2006, Plaintiff Jennifer Piggott was an employee of Hwashin America Corporation.  The said parties have stipulated that they are subject to the provisions of the Workmen's Compensation laws of the State of Alabama.

5.     Plaintiff alleges that, while engaged in employment, she injured her back, legs, and other parts of her body.

6.     Subsequent to the alleged accident, Plaintiff was treated by physicians relating to her injury.

7.     Defendant, through its Workmen's Compensation insurer, has paid to date all of the Plaintiff's medical expenses received from authorized treating physicians.



EXHIBIT
A

8.     A dispute exists between the Plaintiff and the Defendant as to whether any Workmen's Compensation benefits are payable, and, if benefits are payable, a dispute, nevertheless, exists as to the degree or extent of any compensation payable.

9.     In order to amicably settle this dispute, the Plaintiff and Defendant agree to submit themselves to the jurisdiction of this Court. Any objection to venue is waived. The Petition is the written consent of the Plaintiff and Defendant to this Court and any judge thereof to approve the settlement agreed upon between the Plaintiff and Defendant, pursuant to § 25-5-56 of the Code of Ala. (1975, as amended).

10.     Plaintiff desires and requests, and Defendant agrees to pay the Plaintiff the sum of Fifteen Thousand Four Hundred Sixteen and 42/100 Dollars ($15,416.42) in one lump sum, all sums paid as final compromise and satisfaction of any and all claims Plaintiff has or may have, including, but not limited to, Workmen's Compensation benefits past, present and future.

11.     Plaintiff agrees to accept said sum, under the conditions, in full and final settlement, compromise and satisfaction of any and all claims excluding future medical expenses proximately resulting from the accident. Liability for future vocational disability and rehabilitation compensation is closed, and liability for future medical expenses is open.

12.     In further consideration of Fifteen Thousand Four Hundred Sixteen and 42/100 Dollars ($15,416.42) from Defendant and Defendant's Workmen's Compensation carrier, Plaintiff agrees to release and forever discharge Defendant, its agents, employees, servants, and Defendant's Workmen's Compensation carrier, from any and all claims, demands, actions, causes of actions or suits at law or in equity, of whatever kind or nature, for or because of any matter or thing done, or suffered to be done, by anyone prior to and including the date hereof on account of all claims, including, but not limited to, injuries to the person resulting, or to result, from Plaintiff's alleged October 17, 2006, accident and from any issues concerning the Plaintiff's employment with the Defendant or the cessation thereof. By executing this Settlement Agreement, the Plaintiff in no way releases any other defendant or party not herein named, including especially those parties against whom may be liable to Plaintiff for her alleged injuries

in her action styled 2006-CV-1158, *Jennifer Piggott and Slade Piggott v. Gray Construction, Inc., et al.*, pending in the United States District Court for the Middle District of Alabama, Northern Division.

13.    Plaintiff acknowledges and assumes all risks, chance or hazard that said injury may be or may become permanent, progressive, greater or more extensive than is now known, anticipated or expected; that no promise or inducement not herein expressed has been made to Plaintiff; and that in executing this Petition and Settlement Agreement, Plaintiff does not rely upon any statement or representation made by any person, firm, or corporation hereby released, or any agent, physician, doctor, or any other person representing them, or any of them, concerning the nature, extent or duration of said injury, or the legal liability therefore.

14.    This Settlement Agreement is substantially in accordance with the Workmen's Compensation Laws of the State of Alabama, as amended, and when the payment provided for above has been made, Hwashin America Corporation and its Workmen's Compensation carrier, Employer's Claim Management, Inc., shall be and are hereby released from all claims under the Workmen's Compensation Act or otherwise.

15.    From the settlement proceeds, the Plaintiff's attorney is entitled to receive the sum of $____2,658.96____ which represents all expenses incurred and 15% attorney's fee.

DONE this the 25th day of June 2007.

_Jennifer Piggott_
JENNIFER PIGGOTT, Plaintiff

SWORN TO AND SUBSCRIBED BEFORE
ME ON THIS THE 25th DAY OF JUNE 2007.

_____
NOTARY PUBLIC
STATE OF ALABAMA AT LARGE

_____Oct 2008_____
MY COMMISSION EXPIRES

_Julia A. Beasley by dgt w/permission_

JULIA A. BEASLEY
Attorney for Plaintiff

OF COUNSEL:

Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P.O. Box 4160
Montgomery, Alabama 36103-4160

W. CHRISTOPHER WALLER, JR. (WAL187)
JAMES A. RIVES,    (RIV005)
Attorneys for Defendant

OF COUNSEL:

Ball, Ball, Matthews & Novak, P.A.
P. O. Drawer 2148
Montgomery, Alabama  36102-2148
Telephone:  (334) 387-7680