## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JENNIFER PIGGOTT and<br>SLADE PIGGOTT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: CV-06-1158 |
| v. | ) | |
| | ) | |
| GRAY CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOPER'S STEEL | ) | |
| FABRICATORS, INC., ALL-SOUTH | ) | |
| SUBCONTRACTORS, FREELAND- | ) | |
| HARRIS CONSULTING ENGINEERS | ) | |
| OF KENTUCKY, INC., FREELAND | ) | |
| HARRIS CONSULTING ENGINEERS | ) | |
| OF GEORGIA, INC., THE HARDY | ) | |
| CORPORATION, LATTA | ) | |
| PLUMBING & CONSTRUCTION | ) | |
| CO., INC., HWASHIN AMERICA | ) | |
| CORPORATION and FIRESTONE | ) | |
| BUILDING PRODUCTS | ) | |
| COMPANY,  LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## GRAY CONSTRUCTION, INC.'S FIRST AMENDED THIRD-PARTY COMPLAINT

Pursuant to Federal Rules of Civil Procedure, Rules 7 and 14, Defendant/Third-Party Plaintiff Gray Construction, Inc. ("Gray") respectfully submits this First Amended Third-Party Complaint.

## PARTIES

1.      Gray is a Kentucky corporation with its principal place of business in Lexington, Kentucky.

2.      Hwashin America Corporation ("Hwashin") is a Delaware Corporation with its principle place of business in Montgomery, Alabama.  Hwashin is the owner of a manufacturing facility in Greenville, Alabama ("Hwashin facility") and at all times was responsible for maintenance of the Hwashin facility roof drains.

3.      Cooper's Steel Fabricators, Inc. ("Cooper's Steel") is a Tennessee corporation with its principal place of business in Shelbyville, Tennessee.  Cooper's Steel was responsible for supplying and installing the structural steel, girders,  joists, bridging, roof decking, roof frames and other steel products for the Hwashin facility.

4.      All-South Subcontractors, Inc. ("All-South") is an Alabama corporation with its principal place of business in Birmingham, Alabama.  All-South was the roofing subcontractor hired Gray to install the roof at the Hwashin facility.

5.      Freeland-Harris Consulting Engineers of Kentucky, Inc. ("Freeland-Harris Kentucky") is a Kentucky corporation with its principal place of business in Lexington, Kentucky.

6.      Freeland-Harris Consulting Engineers of Georgia, Inc. ("FHCE") is a Georgia corporation with its principal place of business in Tucker Georgia.

7.      Freeland-Harris Kentucky and FHCE (collectively "Freeland-Harris") were the structural engineers retained to design and engineer the Hwashin facility.

8.      The Hardy Corporation ("Hardy") is an Alabama corporation with its principal place of business in Birmingham, Alabama.  Hardy was the mechanical engineer retained to

design and engineer the mechanical systems including, but not limited to, the roof drainage system, at the Hwashin facility.

9.     Latta Plumbing & Construction Co., Inc. ("Latta") is an Alabama corporation with its principal place of business in Gardendale, Alabama.  Latta was hired by Hardy to install all plumbing at the Hwashin facility, including pipes incorporated into the roof drainage system, for the intended benefit of Gray.

10.     Firestone Building Products Company, LLC ("Firestone") is an Indiana corporation with its principal place of business in Indianapolis, Indiana.  Firestone manufactured the office roof and was hired to inspect the installation of the office roof of the Hwashin facility and verify that the roof had been installed properly.

11.     Hwashin, Cooper's Steel, All-South, Freeland-Harris Kentucky, FHCE, Hardy, Latta and Firestone are collectively referred to as Third-Party Defendants.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Gray's Third Party Claims pursuant to 28 U.S.C. §1367, as these claims arise from the same occurrence as Mr. and Mrs. Piggott's claims and the Court has jurisdiction over Mr. and Mrs. Piggott's claims pursuant to 28 U.S.C. § 1332.

13.     This Court is the proper venue for this Third-Party Complaint pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the third-party claims occurred in this judicial district.

14.     This Court has personal jurisdiction over the Third-Party Defendants because they conduct business in and transact business throughout the State of Alabama and it would not

offend notions of fair play or substantial justice to require Third-Party Defendants to answer

Gray's Third-Party Complaint in the State of Alabama.

## STATEMENT OF FACTS

15.     On September 24, 2003, Hwashin contracted with Gray to design and construct

the Hwashin facility.

16.     The Contract entered into by Hwashin and Gray contains the following indemnity

provision:

> 11.10.4.3 Owner's Indemnification Responsibilities. To the fullest extent
> permitted by law, the Owner shall defend, indemnify, and hold harmless
> Design/Builder, its Subcontractors, Suppliers, consultants, agents and
> employees, from any and all claims, liability, damages and expenses
> (including attorney fees and expense), arising out of or resulting from:
>
> (a) Any claim, suit or legal proceeding to recover damages for wrongful
> death, bodily injury, illness or disease or injury to, or destruction of
> tangible property alleged to be caused either directly or indirectly by any
> substances, condition, element, or material or any combination of the
> foregoing: (a) produced by Owner or emitted or released by Owner either
> intentionally or unintentionally, from the facilities designed and/or
> constructed by Design/Builder for the benefit of Owner, or (b) used by
> Design/Builder or incorporated by Design/Builder into the Work herein
> agreed to be performed by Design/Builder for the benefit of Owner if
> specifically required by Owner or if necessary for the planned use of the
> work and to the extent not caused by the mishandling of such substances,
> condition, element or material by Design/Builder, its Subcontractors,
> suppliers, consultants, agents, and employees:

17.     Gray divided the design and construction into parts and subcontracted parts of the

project out to licensed professionals.

18.     Freeland-Harris Kentucky and GNF Architects entered into a Design Consulting

Agreement for Freeland-Harris Kentucky to provide all structural engineering services for the

construction of the Hwashin facility.  Freeland-Harris Kentucky then subcontracted with FHCE

for FHCE to provide structural engineering services for the construction of the Hwashin facility for the intended benefit of Gray.

19.     The Design Consulting Agreement entered into by GNF Architects and Freeland-Harris – Kentucky contains the following indemnity provision:

> To the fullest extent permitted by law, the Consultant shall indemnify and hold harmless the Owner, Gray and other contractors, consultants and subcontractors and all of their agents and employees from and against all claims, damages, losses and expenses, including but not limited to reasonable attorney's fees, arising out of or resulting from the performance of the Consultant's  Services provided that:
>
> (a)     Any such claim, damage, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or to damage to or destruction of tangible property including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of the Consultant or any person directly or indirectly employed by the Consultant or anyone for whose acts the Consultant may be liable (including agents, employees subcontractors and suppliers of Consultant), regardless but not to the extent it is caused in part by a party indemnified hereunder in which case each party ultimately determined to be liable shall be responsible for the damages, costs, and reasonable attorney's fees in proportion to the percentage of liability attributable to that party.

20.     On October 1, 2003, Gray entered into a contract with Hardy for Hardy to provide all engineering, materials, labor, equipment, services, taxes, cartage and all other items necessary to complete the Mechanical Systems, including HVAC and plumbing work for the Hwashin facility.

21.     Hardy subcontracted portions of the work under its subcontract to Latta for the intended benefit of Gray.

22.     On September 19, 2003, Gray entered into a contract with Cooper's Steel. Cooper's Steel agreed to "provide all necessary supervision, labor, materials, tools equipment, services, insurance, taxes, cartage and all other items necessary to complete the Structural and

Miscellaneous Steel Fabrication and Erection work for the Hwashin America Corporation project located in Greenville, Alabama."

23.    On December 2, 2003, Gray entered into a contract with All-South. All-South agreed to "provide all engineering, materials, labor, equipment, services, taxes, cartage and all other items necessary to complete the Roofing scope of work for the New Manufacturing Facility project for Hwashin America Corporation project located in Greenville, Alabama."

24.    Gray's contracts with Hardy, Cooper's Steel and All-South all contain the following indemnity provision:

14.1    <u>SUBCONTRACTOR'S PERFORMANCE</u>.  To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Gray (including its affiliates, parents and subsidiaries) and other contractors and Subcontractors and all of their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work provided that:

(a)    any such claim, damage, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or to damage to or destruction of tangible property including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of the Subcontractor or any person directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable (including sub-Subcontractors and suppliers of Subcontractor), regardless of whether it is caused in part by a party indemnified hereunder.

(b)    litigation on account of infringement or alleged infringement of any letters patent or patent rights by reason of the work or materials or processes used by the Subcontractor, or its subcontractors and/or suppliers.

(c)    claims against or through Gray or liability for claims and liens for labor performed or materials used or furnished through or under Subcontractor on the Project.

(d)    liability or claims against or through to Gray resulting from the Subcontractor's failure to comply with applicable licensing requirements or Code requirements.

(e)    liability imposed upon Gray directly or indirectly by Subcontractor's failure or the failure of any of its employees to comply with law, ordinances, rules, regulations or requirements, including Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part from Subcontractor's acts or omissions.

(f)    such obligations shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity under this Agreement or which would otherwise exist as to any party or person described in this Section 14.

25.    Gray's contracts with Hardy, Cooper's Steel and All-South also contain the following express warranty:

The Subcontractor warrants to the Owner and Gray that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work will be performed in a good, workmanlike manner, be free from defects in materials and workmanship, and that the Work will conform with the requirements of the Subcontract Documents.

26.    After installation of the office roof of the Hwashin facility was complete, the roof was inspected by Firestone.  Firestone warranted that the roof had been properly installed.

27.    On May 6, 2004, construction of the Hwashin facility Assembly Area was complete and Hwashin executed a Certificate of Substantial Completion for this portion of the project.

28.    On June 30, 2004, construction of the Hwashin facility Office Area was complete and Hwashin executed a Certificate of Substantial Completion for this portion of the project.

29.    On October 17, 2006, the partial roof collapsed at the office area of the Hwashin facility.

30.     According to Mr. and Mrs. Piggott's Complaint, Mrs. Piggott, an employee of Hwashin, was injured in the roof collapse.  According to Mr. and Mrs. Piggott's Complaint, Mrs. Piggott suffered serious and permanent injuries, incurred medical expenses, suffered mental anguish, was required to miss work and lose income as a result of the October 17, 2006 roof collapse.

31.     According to Mr. and Mrs. Piggott's Complaint, Mr. Piggott was married to Mrs. Piggott at the time of the collapse and Mr. Piggott has suffered injuries arising from his loss of consortium with Mrs. Piggott.

## COUNT ONE FOR CONTRACTUAL INDEMNITY AS TO HWASHIN

32.     Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 31 of this First Amended Third-Party Complaint.

33.     Hwashin contractually agreed to indemnify and hold harmless Gray for claims of bodily injury against Gray caused directly and/or indirectly by any condition produced by Hwashin.

34.     Mr. and Mrs. Piggott have asserted claims of negligence and wantonness related to Mr. and Mrs. Piggott's injuries that were allegedly incurred when the roof of the Hwashin facility collapsed upon Mrs. Piggott.

35.     The collapse of the office roof was directly caused by a condition created by Hwashin.  The roof collapse was the result of Hwashin failing to maintain the roof drainage system at the Hwashin facility by allowing debris to clog roof drains, which substantially diminished the drainage system's ability to drain water from the roof and which led directly to the collapse.

36.     Gray has been caused to suffer and will continue to suffer damages as a result of Hwashin's refusal to defend and indemnify Gray for the claims asserted by Mr. and Mrs. Piggott.

**WHEREFORE**, Gray demands judgment against Hwashin for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT TWO FOR CONTRACTUAL INDEMNITY AS TO FREELAND-HARRIS

37.     Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 36 of this First Amended Third-Party Complaint.

38.     Freeland-Harris contractually agreed to indemnify and hold harmless Gray for claims against Gray arising out of or resulting from Freeland-Harris' negligent acts or omissions or Freeland-Harris' failure to comply with applicable laws, ordinances, rules, regulations or requirements.

39.     Mr. and Mrs. Piggott have asserted claims of negligence and wantonness related to the design and construction of the Hwashin facility arising from the work performed by Freeland-Harris under its Design Consulting Agreement with Gray.

40.     Freeland-Harris negligently failed to design and engineer the Hwashin facility, including the girders, joists and structural steel supporting the office roof, and/or negligently failed to review the design of others.  Freeland-Harris' negligence specifically includes, but is not limited to, its failure to design and engineer the office facility to accommodate the loads and uneven loads that resulted from the office roof interior drainage system.

41.    Gray has been caused to suffer and will continue to suffer damages as a result of Freeland-Harris' refusal to defend and indemnify Gray for the claims asserted by Mr. and Mrs. Piggott.

**WHEREFORE**, Gray demands judgment against Freeland-Harris for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT THREE FOR CONTRACTUAL INDEMNITY AS TO HARDY

42.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 41 of this First Amended Third-Party Complaint.

43.    Hardy contractually agreed to indemnify and hold harmless Gray for claims against Gray arising out of or resulting from Hardy's negligent acts or omissions or Hardy's failure to comply with applicable laws, ordinances, rules, regulations or requirements.

44.    Mr. and Mrs. Piggott have asserted claims of negligence and wantonness related to the design and construction of the Hwashin facility arising from the work performed by Hardy under its subcontract with Gray.

45.    Hardy negligently failed to design and install roof drainage systems in accordance with the drawings and specifications and in accordance with national and local codes.  Hardy's negligence specifically includes, but is not limited to, its failure to design and install a proper primary and secondary drainage system to service the office roof, failure to design and install a primary and secondary drainage system capable of draining the office roof and failure to supervise and inspect the work of its subcontractors.

46.    Gray has been caused to suffer and will continue to suffer damages as a result of Hardy's refusal to defend and indemnify Gray for the claims asserted by Mr. and Mrs. Piggott.

**WHEREFORE**, Gray demands judgment against Hardy for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT FOUR FOR CONTRACTUAL INDEMNITY AS TO COOPER'S STEEL

47.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 46 of this First Amended Third-Party Complaint.

48.    Cooper's Steel contractually agreed to indemnify and hold harmless Gray for claims against Gray arising out of or resulting from Cooper's Steel's negligent acts or omissions or Cooper's Steel's failure to comply with applicable laws, ordinances, rules, regulations or requirements.

49.    Mr. and Mrs. Piggott have asserted claims of negligence and wantonness related to the design and construction of the Hwashin facility arising from the work performed by Cooper's Steel under its subcontract with Gray.

50.    Cooper's Steel negligently provided shop drawings, designs and specifications regarding the structural framing of the Hwashin facility.  Cooper's Steel's negligence specifically includes, but is not limited to, its failure to design the girders, joists and structural steel to comply with the drawings and specifications and national and local prevailing codes and its failure to design the office to support the loads and uneven loads caused by the office roof drainage system.

51.    Gray has been caused to suffer and will continue to suffer damages as a result of Cooper's Steel refusal to defend and indemnify Gray for the claims asserted by Mr. and Mrs. Piggott.

**WHEREFORE**, Gray demands judgment against Cooper's Steel for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT FIVE FOR CONTRACTUAL INDEMNITY AS TO ALL-SOUTH

52.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 51 of this First Amended Third-Party Complaint.

53.    All-South contractually agreed to indemnify and hold harmless Gray for claims against Gray arising out of or resulting from All-South's negligent acts or omissions or All-South's failure to comply with applicable laws, ordinances, rules, regulations or requirements.

54.    Mr. and Mrs. Piggott have asserted claims of negligence and wantonness related to the design and construction of the Hwashin facility arising from the work performed by All-South under its subcontract with Gray.

55.    All-South negligently failed to install the office roof in accordance with the drawings and specifications, the roof manufacturer's specifications and/ or national and local prevailing codes.  All-South's negligent acts specifically include, but are not limited to, the improper installation of the roof membrane around office drains, which restricted the drain openings and substantially diminished the drainage system's ability to drain water from the office roof and its failure to install a secondary drainage system in accordance with the drawings and specifications.

56.    Gray has been caused to suffer and will continue to suffer damages as a result of All-South's refusal to defend and indemnify Gray for the claims asserted by Mr. and Mrs. Piggott.

**WHEREFORE**, Gray demands judgment against All-South for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT SIX FOR COMMON LAW INDEMNITY AS TO HWASHIN

57.     Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 56 of this First Amended Third-Party Complaint.

58.     Hwashin is the owner of the Hwashin facility and was responsible for maintaining the roof drainage system at the Hwashin facility after construction.

59.     Hwashin negligently failed to maintain the roof drainage system at the Hwashin facility by allowing debris to clog the roof drains over the office area and negligently failed to perform periodic maintenance on the roof drains, which substantially diminished the drainage system's ability to drain water from the roof and directly led to the collapse of the roof.

60.     Hwashin was actively negligent in its breach of its duties and was the active cause of the roof collapse.

61.     As a proximate result of Hwashin's active negligence, Gray has been caused to suffer and will continue to suffer damages as a result of Hwashin's refusal to defend and indemnify Gray for Hwashin's active negligence.

**WHEREFORE**, Gray demands judgment against Hwashin for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT SEVEN FOR COMMON LAW INDEMNITY AS TO LATTA

62.     Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 61 of this First Amended Third-Party Complaint.

63.     Latta provided materials, labor or services related to the design and/or construction of the Hwashin facility, including, but not limited to installation of the pipes incorporated into the office roof drainage system.

64.     Mr. and Mrs. Piggott assert claims against Gray arise from the design and work performed by Latta.

65.     Latta was actively negligent in its breach of its duties and was the active cause of the roof collapse.

66.     Latta's negligence specifically includes, but is not limited to, its failure to correctly install the drain pipes and leaders with the appropriate downward slope as to drain the office roof and its failure to install a properly functioning primary and secondary drainage system.

67.     As a proximate result of Latta's active negligence, Gray has been caused to suffer and will continue to suffer as a result of Latta's refusal to indemnify Gray for Latta's active negligence.

**WHEREFORE**, Gray demands judgment against Latta for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT EIGHT FOR COMMON LAW INDEMNITY AS TO FIRESTONE

68.     Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 67 of this First Amended Third-Party Complaint.

69.     Firestone manufactured and supplied the roofing materials used in the construction of the Hwashin facility. Firestone also inspected the roofing work of All-South and warranted that the roof had been properly installed.

70.     Mr. and Mrs. Piggott's claims against Gray arise from Firestone's negligent inspection of the Hwashin facility roof.

71.     Firestone was actively negligent in its breach of its duties and was the active cause of the roof collapse.

72.     Firestone's negligence specifically includes, but is not limited to, its failure to properly inspect the roof and note All-South's defective termination and flashing of roof membrane around drain openings. As a result of this negligent inspection, the improper roof installation completed by All-South was not discovered, which caused the collapse of the building.

73.     As a proximate result of Firestone's active negligence, Gray has been caused to suffer and will continue to suffer as a result of Firestone's refusal to indemnify Gray for Firestone's active negligence.

**WHEREFORE**, Gray demands judgment against Firestone for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT NINE FOR BREACH OF CONTRACT AS TO FREELAND-HARRIS

74.     Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 73 of this First Amended Third-Party Complaint.

75.     Freeland-Harris contracted with Gray to supply and install the structural steel, girders, joists, bridging, roof decking, roof frames and other steel products used in the construction of the Hwashin facility.

76.     Freeland-Harris' contract states that "all work shall be performed in accordance with plans and specifications as prepared by James N. Gray Company and GNF Architects and Engineers and national and local prevailing Codes."

77.     Freeland-Harris breached its contract with Gray by failing to perform its work in accordance with the plans and specifications and national and local prevailing Codes.

78.     Freeland –Harris breached its contract by failing to design and engineer the Hwashin facility, including the girders, joists and structural steel supporting the office roof, and/or failing to review the design of others in accordance with its contractual obligations. Freeland-Harris' breach of contract specifically includes, but is not limited to, its failure to design and engineer the office facility to accommodate the loads and uneven loads that resulted from the office roof interior drainage system.

79.     As a result of Freeland-Harris breaches of contract, Gray has been proximately damaged.

**WHEREFORE**, Gray demands judgment against Freeland-Harris for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT TEN FOR BREACH OF CONTRACT AS TO COOPER'S STEEL

80.     Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 79 of this First Amended Third-Party Complaint.

81.    Cooper's Steel contracted with Gray to supply and install the structural steel, girders, joists, bridging, roof decking, roof frames and other steel products used in the construction of the Hwashin facility.

82.    Cooper's Steel's contract states that "all work shall be performed in accordance with plans and specifications as prepared by James N. Gray Company and GNF Architects and Engineers and national and local prevailing Codes."

83.    Cooper's Steel breached its contract with Gray by failing to perform its work in accordance with the plans and specifications and national and local prevailing Codes.

84.    Coopers' Steel breached its contract with Gray by failing to provide shop drawings, designs and specifications regarding the structural framing of the Hwashin facility in accordance with its contract with Gray.    Cooper's Steel's breach of contract specifically includes, but is not limited to, its failure to design the girders, joists and structural steel to comply with the drawings and specifications and national and local prevailing codes and its failure to design the office to support the loads and uneven loads caused by the office roof drainage system.

85.    As a result of Cooper's Steel's breaches of contract, Gray has been proximately damaged.

**WHEREFORE**, Gray demands judgment against Cooper's Steel for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT ELEVEN FOR BREACH OF CONTRACT AS TO HARDY

86.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 85 of this First Amended Third-Party Complaint.

87.     Hardy entered into a contract with Gray to provide design and construction services for the mechanical systems, including the design and installation of the roof drainage system, for the Hwashin facility.

88.     Hardy's contract required "all work is to be performed in accordance with all prevailing local and national Codes, ordinances and requirements."

89.     Hardy breached its contract with Gray by failing to perform its work in accordance with the plans and specifications and national and local prevailing Codes.

90.     Hardy breached its contract with Gray by failing to design and install roof drainage systems in accordance with its contract with Gray.  Hardy's breach of contract specifically includes, but is not limited to, its failure to design and install a proper primary and secondary drainage system to service the office roof, failure to design and install a primary and secondary drainage system capable of draining the office roof and failure to supervise and inspect the work of its subcontractors.

91.     As a result of Hardy's breaches of contract, Gray has been proximately damaged.

**WHEREFORE**, Gray demands judgment against Hardy for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT TWELVE FOR BREACH OF CONTRACT AS TO ALL-SOUTH

92.     Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 91 of this First Amended Third-Party Complaint.

93.     All-South entered into a contract with Gray to provide engineering, materials, labor, equipment, services, taxes, cartage and all other items necessary to complete the roofing scope of work for the Hwashin facility.

94.    All-South's contract provides "all work shall be performed in accordance with plans and specifications as prepared by James N. Gray Company, GNF Architects and Engineers, PSC and national and local prevailing Codes."

95.    All-South breached its contract with Gray by failing to perform its work in accordance with the plans and specifications and national and local prevailing Codes would constitute a breach of contract.

96.    All-South breached its contract with Gray by failing to install the office roof in accordance with its contract with Gray.  All-South's breach of contract specifically includes, but is not limited to, the improper installation of the roof membrane around office drains, which restricted the drain openings and substantially diminished the drainage system's ability to drain water from the office roof and its failure to install a secondary drainage system in accordance with the drawings and specifications.

97.    As a result of All-South's breaches of contract, Gray has been proximately damaged.

**WHEREFORE**, Gray demands judgment against All-South for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT THIRTEEN FOR THIRD-PARTY BENEFICIARY BREACH OF CONTRACT AS TO LATTA

98.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 97 of this First Amended Third-Party Complaint.

99.    Latta contracted with Hardy to install all plumbing, including the roof drains and components.

100.    Gray was an intended third-party beneficiary of the contract between Latta and Hardy.

101.    Latta breached its contract with Hardy, to which Gray was an intended third-party beneficiary, by improperly installing the drainage pipes and components of the office roof drainage system and by failing to do its work in accordance with the plans and specifications and failing to comply with all national and local prevailing codes.

102.    As a proximate result of Latta's breaches of contract, Gray has been proximately damaged.

**WHEREFORE**, Gray demands judgment against Latta for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT FOURTEEN FOR BREACH OF EXPRESS WARRANTY AS TO HARDY

103.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 102 of this First Amended Third-Party Complaint.

104.    Hardy expressly warranted to Gray that the materials and work they provided in connection with the design and construction of the Hwashin facility would be of good quality, free from defects, conform to the designs and specifications for the Hwashin facility and comply with all applicable Codes, regulations and federal, state and local statutes and ordinances.

105.    Hardy breached its express warranty by failing to design and install roof drainage systems in accordance with the drawings and specifications and in accordance with national and local codes.  Hardy's breach of express warranty specifically includes, but is not limited to, its failure to design and install a proper primary and secondary drainage system to service the office

roof, failure to design and install a primary and secondary drainage system capable of draining the office roof and failure to supervise and inspect the work of its subcontractors.

106.    As a proximate result of Hardy's breach of express warranties, Gray has been caused to suffer damages, and will continue to suffer damages.

**WHEREFORE**, Gray demands judgment against Hardy for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT FIFTEEN FOR BREACH OF EXPRESS WARRANTY AS TO COOPER'S STEEL

107.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 106 of this First Amended Third-Party Complaint.

108.    Cooper's Steel expressly warranted to Gray that the materials and work they provided in connection with the design and construction of the Hwashin facility would be of good quality, free from defects, conform to the designs and specifications for the Hwashin facility and comply with all applicable Codes, regulations and federal, state and local statutes and ordinances.

109.    Cooper's Steel breached its express warranty by failing to provide shop drawings, designs and specifications regarding the structural framing of the Hwashin facility in accordance with the drawings and specifications and national and local prevailing codes. Cooper's Steel's breach of express warranty specifically includes, but is not limited to, its failure to design the girders, joists and structural steel to comply with the drawings and specifications and national and local prevailing codes and its failure to design the office to support the loads and uneven loads caused by the office roof drainage system.

110.    As a proximate result of Cooper's Steel's breach of express warranties, Gray has been caused to suffer damages, and will continue to suffer damages.

**WHEREFORE**, Gray demands judgment against Cooper's Steel for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

## COUNT SIXTEEN FOR BREACH OF EXPRESS WARRANTY AS TO ALL-SOUTH

111.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 110 of this First Amended Third-Party Complaint.

112.    All-South expressly warranted to Gray that the materials and work they provided in connection with the design and construction of the Hwashin facility would be of good quality, free from defects, conform to the designs and specifications for the Hwashin facility and comply with all applicable Codes, regulations and federal, state and local statutes and ordinances.

113.    All-South breached its express warranty by failing to install the office roof in accordance with the drawings and specifications, the roof manufacturer's specifications and/ or national and local prevailing codes.  All-South's breach of express warranty specifically include, but is not limited to, the improper installation of the roof membrane around office drains, which restricted the drain openings and substantially diminished the drainage system's ability to drain water from the office roof and its failure to install a secondary drainage system in accordance with the drawings and specifications.

114.    As a proximate result of All-South's breach of express warranties, Gray has been caused to suffer damages, and will continue to suffer damages.

**WHEREFORE**, Gray demands judgment against All-South for compensatory damages in an amount to be determined by a jury, together with interest from the date of injury, costs of this proceeding and attorney's fees.

### COUNT SEVENTEEN FOR NEGLIGENCE AS TO FREELAND-HARRIS

115.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 114 of this First Amended Third-Party Complaint.

116.    Freeland-Harris owed a duty to Gray to engineer the Hwashin facility in such a manner as to ensure its structural integrity and stability and prevent its collapse and in accordance with all building codes and requirements.

117.    Freeland-Harris negligently failed to design and engineer the Hwashin facility, including the girders, joists and structural steel supporting the office roof, and/or negligently failed to review the design of others.  Freeland-Harris' negligence specifically includes, but is not limited to, its failure to design and engineer the office facility to accommodate the loads and uneven loads that resulted from the office roof interior drainage system.

118.    As a proximate result of Freeland-Harris' breach of duties, Gray has been proximately caused to suffer damages, and will continue to suffer damages.

**WHEREFORE**, Gray respectfully requests this Honorable Court grant judgment against Freeland-Harris and award compensatory damages in an amount to be determined by struck jury.

### COUNT EIGHTEEN FOR NEGLIGENCE AS TO HARDY

119.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 118 of this First Amended Third-Party Complaint.

120.    Hardy owed a duty to Gray to engineer the Hwashin facility and its drainage systems in such a manner as to ensure its structural integrity and stability and prevent its collapse and in accordance with all building codes and requirements.

121.    Hardy negligently failed to design and install roof drainage systems in accordance with the drawings and specifications and in accordance with national and local codes.  Hardy's negligence specifically includes, but is not limited to, its failure to design and install a proper primary and secondary drainage system to service the office roof, failure to design and install a primary and secondary drainage system capable of draining the office roof and failure to supervise and inspect the work of its subcontractors.

122.    As a proximate result of Hardy's breach of duties, Gray has been proximately caused to suffer damages, and will continue to suffer damages.

**WHEREFORE**, Gray respectfully requests this Honorable Court grant judgment against Hardy and award compensatory damages in an amount to be determined by struck jury.

## COUNT NINETEEN FOR NEGLIGENCE AS TO COOPER'S STEEL

123.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 122 of this First Amended Third-Party Complaint.

124.    Cooper's Steel owed a duty to Gray to design and install the structural steel, joists and girders at the Hwashin facility in such a manner as to ensure the Hwashin facility's structural integrity and stability and prevent its collapse and in accordance with all building codes and requirements.

125.    Cooper's Steel negligently provided shop drawings, designs and specifications regarding the structural framing of the Hwashin facility.  Cooper's Steel's negligence specifically includes, but is not limited to, its failure to design the girders, joists and structural

steel to comply with the drawings and specifications and national and local prevailing codes and its failure to design the office to support the loads and uneven loads caused by the office roof drainage system.

126.    As a proximate result of Cooper's Steel's breach of duties, Gray has been proximately caused to suffer damages, and will continue to suffer damages.

**WHEREFORE**, Gray respectfully requests this Honorable Court grant judgment against Cooper's Steel and award compensatory damages in an amount to be determined by struck jury.

## COUNT TWENTY FOR NEGLIGENCE AS TO ALL-SOUTH

127.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 126 of this First Amended Third-Party Complaint.

128.    All-South owed a duty to Gray to design and construct the roof and roof drains of the Hwashin facility in such a manner as to ensure its structural integrity and stability and prevent its collapse and in accordance with all building codes and requirements.

129.    All-South negligently failed to install the office roof in accordance with the drawings and specifications, the roof manufacturer's specifications and/ or national and local prevailing codes.  All-South's negligent acts specifically include, but are not limited to, the improper installation of the roof membrane around office drains, which restricted the drain openings and substantially diminished the drainage system's ability to drain water from the office roof and its failure to install a secondary drainage system in accordance with the drawings and specifications.

130.    As a proximate result of All-South's breach of duties, Gray has been proximately caused to suffer damages, and will continue to suffer damages.

**WHEREFORE**, Gray respectfully requests this Honorable Court grant judgment against All-South and award compensatory damages in an amount to be determined by struck jury.

## COUNT TWENTY-ONE FOR NEGLIGENCE AS TO LATTA

131.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 130 of this First Amended Third-Party Complaint.

132.    Latta owed a duty to Gray to install the pipes and other components of the Hwashin facility's roof drainage system in such a manner as to ensure its structural integrity and stability and prevent its collapse and in accordance with all building codes and requirements.

133.    Latta negligently installed the drain pipes and other components of the office roof drainage system.  Latta's negligence specifically includes, but is not limited to, its failure to correctly install the drain pipes and rain leaders with the appropriate downward slope as to drain the office roof and its failure to install a properly functioning primary and secondary drainage system.

134.    As a proximate result of Latta's breach of duties, Gray has been proximately caused to suffer damages, and will continue to suffer damages.

**WHEREFORE**, Gray respectfully requests this Honorable Court grant judgment against Latta and award compensatory damages in an amount to be determined by struck jury.

## COUNT TWENTY-TWO FOR NEGLIGENCE AS TO FIRESTONE

135.    Gray realleges as if fully set out each and every allegation contained in Paragraph Nos. 1 through 134 of this First Amended Third-Party Complaint.

136.    Firestone owed a duty to inspect the office roof of the Hwashin facility and verify that the roof had been installed properly.

137.    Firestone negligently inspected the office roof of the Hwashin facility. Firestone's negligence specifically includes, but is not limited to, its failure to recognize that All-South had not properly cut the roof membrane around the drain openings.

138.    As a proximate result of Firestone's breach of duties, Gray has been caused to suffer damages and will continue to suffer damages.

**WHEREFORE**, Gray respectfully requests this Court grant judgment against Firestone and award compensatory damages in an amount to be determined by struck jury.

<u>**TRIAL BY STRUCK JURY IS REQUESTED**</u>

DATED this the 21st day of September, 2007.

By: <u>s/*Brian M. McClendon*</u>
     E. Britton Monroe (MON032)
     Mickey B. Wright (WRI048)
     Brian M. McClendon (MCC133)
     Attorneys for Defendant/ Third Party
     Plaintiff Gray Construction, Inc.

**OF COUNSEL:**
LLOYD, GRAY & WHITEHEAD, P.C.
2501 20th Place South, Suite 300
Birmingham, Alabama 35223
Telephone:  (205) 967-8822
Facsimile:  (205) 967-2380

## CERTIFICATE OF SERVICE

      I hereby certify that on the 21st day of September, a true and correct copy of the foregoing has been furnished by U.S. Mail, postage prepaid, upon the following parties:

Jere L. Beasley, Esq.
Julia Ann Beasley, Esq.
Beasley, Allen, Crow, Methvin,
    Portis & Miles, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
***Counsel for Plaintiffs, Jennifer and Slade Piggott***

Thomas T. Gallion, III, Esq.
Constance C. Walker, Esq.
Felicia A. Long, Esq.
Haskell, Slaughter, Young & Gallion, LLC
P.O. Box 4660
Montgomery, AL  36103-4660
***Counsel for Latta Plumbing & Construction Co., Inc.***

Charles Keith Hamilton, Esq.
Bainbridge, Mims, Rogers & Smith
P.O. Box 530886
Birmingham, AL  35253-0886
***Counsel for Freeland-Harris Consulting Engineers of Kentucky, Inc.***

John S. Somerset, Esq.
Sudderth & Somerset
5385 First Avenue North
Birmingham, AL  35212
***Counsel for All-South Subcontractors, Inc.***

Linda H. Ambrose, Esq.
Rogers & Associates
3000 Riverchase Galleria, Ste. 650
Birmingham, AL  35244
***Counsel for Hwashin America Corp.***

A. Joe Peddy, Esq.
Robert B. Stewart, Esq.
Smith, Spires & Peddy
2015 2nd Avenue North, Ste. 200
Birmingham, AL  35203
***Counsel for Cooper's Steel Fabricators, Inc.***

J. Lister Hubbard, Esq.
Richard H. Allen, Esq.
Arden Reed Pathak, Esq.
Capell & Howard, P.C.
P.O. Box 2069
Montgomery, AL  36102-2069
***Counsel for Hwashin America Corp.***

James A. Rives, Esq.
William Christopher Waller, Jr., Esq.
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, AL  36102-2148
***Counsel for Hwashin America Corp.***

Hope T. Cannon, Esq.
Brittin T. Coleman, Esq.
Kenneth M. Perry, Esq.
Bradley, Arant, Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2104
***Counsel for Firestone Building Products Company, LLC***

John M. Laney, Jr., Esq.
John C. DeShazo, Esq.
Laney & Foster, P.C.
P.O. Box 43798
Birmingham, AL  35243-0798
***Counsel for Freeland-Harris Consulting Engineers of Georgia, Inc.***

Larry W. Harper, Esq.
Porterfield, Harper, Mills & Motlow, P.A.
22 Inverness Center Parkway, Ste. 600
P.O. Box 530790
Birmingham, AL   35253-0790
**Counsel for The Hardy Corporation**

s/*Brian M. McClendon*
OF COUNSEL